In the Matter of the Estate of EDNA BEAMAN, Deceased.

Surrogate's Court, New York County, May 27, 1939.

*Charles V. Scanlon*, for the petitioner.

*William C. Chanler, Corporation Counsel* [*Joseph De Vito, Assistant Corporation Counsel*, of counsel], for William Hodson, as commissioner of welfare of the city of New York.

*Nicholas P. Iannuzzi*, special guardian.

FOLEY, S. In this contested accounting proceeding a question arises as to the allowance of a claim for $849.97 asserted by the department of public welfare of the city of New York against the interest of the infant who is the beneficiary of the residuary trust.

It is undisputed that the infant was placed in an institution and boarded at the expense of the city from June 30, 1933, to October 15, 1935, at the rate of $7.10 per week. The testatrix died on August 3, 1933. It is also undisputed that the infant had no funds or property applicable to this support before the date of the death of the testatrix, when the income on the small trust fund created by the will became available. The amount of this residuary trust fund is approximately $5,500 and it is estimated that if retained in a savings bank it will yield an income of about $110 per year for the infant. The principal of the fund, with accumulated income, is payable under the terms of the will to the infant when she attains the age of twenty-one years. The infant is now fifteen years old.

The claim of the city is asserted under section 128 of the Public Welfare Law which authorizes the enforcement by action or proceeding against the property or estate of a person who has received public relief and care during the preceding ten years. The public welfare official, under the terms of this section, is entitled to recover the cost of such relief which is declared to be an implied contract.

The courts have recognized and enforced such right of recovery in a liberal spirit in favor of public welfare agencies. (*Betz* v. *Horr*, 250 App. Div. 457; *Matter of Collins*, 243 id. 737; *Matter of Lang*, 242 id. 781; *Matter of Beningaso*, 165 Misc. 459; *Matter of Trent*, 159 id. 822; *Tolley* v. *Maliswaski*, Id. 89; *Matter of Black*, 150 id. 433; *Matter of Garrett*, 144 id. 916.)

In certain cases the recipients of relief have misrepresented or concealed their actual resources or the ownership of property or the transfer of savings bank accounts in order to obtain relief. Under such circumstances it is clearly evident that payments made for relief induced by fraud should be subject to restitution to the public agency which granted it. In other cases the adult person who had received relief may have later come into funds or property. For similar logical reasons the city or State should be reimbursed for prior outlays made for the support of the former indigent person.

In 1936, section 128 of the Public Welfare Law and its companion, section 125, were amended in a manner material to the present controversy. These amendments resulted from conferences held by my colleague, Mr. Surrogate DELEHANTY, assisted by other surrogates and by the representatives of the Emergency Relief Bureau in New York city and the Attorney-General of the State of New York representing the State welfare agencies. Certain conditions arising out of relief applications in the estates of infants had been presented which involved difficult problems for the public welfare agencies and the surrogates and the need for corrective remedies by legislation. They were:

(1) The relief agencies insisted upon the exhaustion of all funds of the family before relief would be granted. In the Surrogates' Courts guardians, whether parents or other persons, made numerous applications for unreasonable expenditures out of the estates of infants, particularly those of small amounts, in order to exhaust the entire estate as a basis for a claim for relief. These applications, in many cases, were for improvident and excessive amounts. The infants would thus be stripped of their small estates and of what should be regarded as savings accounts which would be available in the event of illness of the infant or other emergency. The representatives of the relief agencies and the surrogates were in agreement that in such cases the infants' funds should be protected by the establishment of a reasonable minimum reserve. While no pecuniary amount was fixed in the new amendments, it would appear that an average amount of $500 might properly constitute such a reserve as a savings account and that invasion should not be permitted below that amount.

(2) In many cases the infants' funds were derived from recoveries for injuries sustained by the infant. Medical or surgical care might be required to restore the health of the infant or rehabilitate him from the injury. In such cases the future reasonable requirements of the infant should be properly taken into account and his funds protected from a claim for reimbursement for the support of his indigent parents under section 125 of the Public Welfare Law or for relief given to him personally under section 128.

(3) Regardless of the source of the funds or property received by the infant, no allowance out of the estate should be authorized for relief granted before the acquisition of such funds or property.

(4) Regardless of the source of the funds or property, reimbursement to public agencies for relief given to the infant personally or to his destitute parents should not be permitted where the infant was possessed of money or property sufficient only for his reasonable requirements which include his present and future maintenance, education, medical care and any other factors applicable to his condition during the period of his minority.

(5) Where the infant had money or property in excess of his reasonable requirements and became a public charge, the public agency should properly be reimbursed out of the infant's estate for the cost of relief given to him.

With these conditions and objectives in mind, the concluding sentences of sections 125 and 128 were added respectively by chapters 426 and 463 of the Laws of 1936 upon the recommendation of the surrogates, the Emergency Relief Bureau and the Attorney-General. By chapter 426 of the Laws of 1936 the following sentence was added to section 125: " No liability for support shall be imposed

upon a minor child or a grandchild, nor shall the money or property of such minor child or grandchild be subject to the burden of support of a parent or grandparent unless the court to which resort is had for appropriation of the funds of such infant child or grandchild shall expressly find that the money and property of such infant are in excess of the reasonable requirements of such infant, taking into account his maintenance, education, medical care and any other factors applicable to his condition."

By chapter 463 of the Laws of 1936 the following sentence was added to section 128: " No right of action shall accrue by reason of the relief granted to an infant unless at the time such relief was granted the infant was possessed of money and property in excess of his reasonable requirements as described in section one hundred twenty-five of this act."

In the pending case the claim was originally presented for the reimbursement for relief given during the period prior to the acquisition of the moneys of the infant. Under the new provisions of section 128 reimbursement in such a case may not be authorized. The corporation counsel has withdrawn that part of the claim which covered the beginning of the relief period to the date of death of the testatrix when the income of the infant from the trust fund began to accrue.

The surrogate determines upon the special facts here that the remaining part of the claim of the city should be disallowed. It would require approximately a period of seven years to reimburse the city on its claim out of the small income of the infant. As stated above, that income amounts to $110 annually. This annual income is far less than the reasonable requirements for even her maintenance alone, without other factors such as medical care. To withdraw the income as it accrued in order to satisfy the claim for reimbursement would inevitably lead to the infant again becoming a public charge with further expense to the welfare authorities. On the other hand by authorizing the expenditure of current income for the infant's maintenance it will be possible for her to remain with the person who presently takes care of her.

The claim of the city is therefore disallowed under the special circumstances of this estate.

The personal claim of the accounting party is allowed in the sum of $376.

Submit decree on notice settling the account accordingly.