In the Matter of MARY BEDDIA, an Infant.

Surrogate's Court, Kings County, November 28, 1951.

*Denis M. Hurley, Corporation Counsel (Philip Sokol* and *Max H. Finkelberg* of counsel), for Henry L. McCarthy, as Commissioner of Welfare of the City of New York, petitioner.

*Leo J. Ross* for Veterans' Administration.

RUBENSTEIN, S. The commissioner of welfare of the City of New York seeks to obtain reimbursement from the estate of an infant, for moneys expended by his department for its care and maintenance from September 11, 1946, to June 18, 1951, and for the cost of current care and maintenance of the infant.

The Veterans' Administration appearing on behalf of the infant pursuant to section 1384-t of the Civil Practice Act,

opposes the application for reimbursement for past expenditures and consents that the court fix a reasonable monthly allowance for the infant's future maintenance.

The material facts necessary for a determination of the issues have been agreed upon by stipulation. The infant was committed as a public charge by the commissioner of welfare when she was a year old, to an authorized agency hereafter referred to as the Home. Pursuant to this commitment and in October, 1940, the Home boarded out the infant to the general guardian who is unrelated to the infant. The father of the child was declared dead by the War Department in September, 1945, and the mother has not and is unable to contribute to the cost of its care. Upon the official finding of the death of the infant's father, she became entitled to compensation benefits and National Service Life Insurance payments. Letters of guardianship were duly issued to the boarding mother on May 22, 1946. She thereafter deposited all the benefits received from the Veterans' Administration and on the last accounting in May, 1951, there was on deposit to the credit of the infant the sum of $5,512.82. The guardian has been and is currently receiving from the Veterans' Administration on behalf of the infant monthly compensation benefits of $58 and National Life Insurance payments of $27.15 making a total of $85.15 per month. All the funds on deposit represent funds received from the Veterans' Administration. The department of welfare has paid to the Home for the cost of care and maintenance of the infant from September 11, 1946, when the account was first opened, until the date of this application on June 18, 1951, the sum of $4,051.47. It had knowledge of the fact that payments were made to the guardian on behalf of the infant but made no application for an order of support and maintenance nor did the guardian make such application although requested to do so by the department.

The Veterans' Administration bases its objection to reimbursement for past expenditures on section 454-a of title 38 of the United States Code which provides that benefits paid by it are exempt from the claim of all creditors, and section 667 of the Civil Practice Act which provides that a pension or other reward heretofore or hereinafter granted by the United States, or a State, for military or naval services, are exempt from levy and sale by virtue of an execution, and from seizure in a legal proceeding.

The courts in this State have consistently followed the rule announced in *Matter of Cervantes* (174 Misc. 594, 596) where it was said: " The legislative intent to safeguard pension moneys and to make them immune from the claims of creditors has been given full effect by the courts of this State. Since 1918 more stringent Federal statutes have been enacted which are designed to jealously guard the rights of dependents of deceased war veterans. * * * In *Surace* v. *Danna* (248 N. Y. 18) the late Judge Cardozo, in referring to the decision in *Yates County Nat. Bank* v. *Carpenter,* stated (at p. 24): ' In these circumstances, our decision in *Yates County National Bank* v. *Carpenter* (119 N. Y. 550) supplies the applicable rule. Code of Civil Procedure, section 1393 (now Civ. Prac. Act, § 667), exempts from execution a " pension * * * heretofore or hereafter granted by the United States * * * for military * * * services." We were asked to limit this exemption to the pension or the pension moneys before payment by the government. We held that it protected moneys collected by the pensioner. We even extended the immunity to a dwelling house and lot in which the moneys were invested. " It is quite obvious," we said, " that such an exemption can produce no beneficial effect, unless it is extended beyond the letter of the act, and given life and force, according to its evident spirit and meaning " * * * .' ' "

In *Matter of Lancaster* (39 N. Y. S. 2d 561), where the City of New York sought to recover the sum of over $3,000 expended for the care and maintenance of an infant daughter of a veteran in a similar case, the court said " In order to justify its rejection of petitioner's request to be reimbursed for past services as a creditor, the court need but refer to *Matter of Cervantes,* 174 Misc. 594 ".

In a recent case (*Matter of Witten,* N. Y. L. J., Sept. 25, 1951, p. 621, col. 7, Griffiths, S.) where a guardian sought to be reimbursed for moneys expended for past support of an infant, the court in denying the application stated as follows: " The courts have consistently denied applications seeking reimbursement for past expenditures where the funds of the infant emanate from the Veterans' Administration ", citing *Matter of Cervantes (supra)* and *Matter of Lancaster (supra).*

This court sees no reason to deviate from what appears to be the established rule. The City of New York had full knowledge of the payments made to the guardian of the infant by the Veterans' Administration when they were first made in 1946 and it did not see fit to apply for an order for support and maintenance of the infant. Its position now is no different from any other

general creditor and as such it cannot recover for past expenditures by virtue of the provisions of section 454-a of title 38 of the United States Code and section 667 of the Civil Practice Act. This part of the application is therefore denied.

As to the allowance for the infant's maintenance from the date of this application, it appears that the department of welfare had been paying to the Home, for the infant's maintenance, sums ranging from $2.56 to $3.15 per day and the guardian had received from the Home monthly payments of $52.50 which had been increased to $60 when the department paid $3.15 per day. In addition to such payments the Home obligated itself to provide case supervision and medical care. While it is true that the guardian did not avail herself of the latter services and expended her own funds for medical care nevertheless the Home must provide these services when called upon. The department of welfare will be allowed the sums actually expended by it for the care and maintenance of the infant from the date of this application but not in excess of $75 per month. The allowance for current care of the infant is fixed in the sum of $75 per month.

Submit decree, on notice, accordingly.