Laurence D. Wood, S.
The petition for relief of the Welfare Commissioner of Onondaga County shows that the First Trust and Deposit Company of Syracuse was on June 14, 1956, appointed by the Onondaga County Surrogate’s Court as *621 guardian of said James L. Harp, an infant born on April 8, 1945. The petition further discloses that between July, 1946 and August 15, 1950, the said infant was cared for in a foster home at the expense of the Department of Public Welfare and that subsequent to August 15, 1950, he has resided at the House of Providence in the City of Syracuse under the care, maintenance and supervision of the Department of Public Welfare.
The petition alleges that the guardian holds $630.06 principal and $115.02 interest accumulated, totaling $745.08 on January 18,1960 and that the infant receives $15.54 monthly, and further alleges that the Division of Veterans’ Assistance of the Onondaga County Welfare Department has spent $4,090.62 since June 14, 1956 for support of the said infant and that it is currently spending $114.66 monthly to support this infant.
The petition requests an order that the guardian pay over all but $100 from the $745.08 in the hands of the guardian on January 18,1960, to the Department of Public Welfare as partial reimbursement of the $4,090.62 it alleges it expended between June 14, 1956 and the date of the petition January 27, 1960; and the further sum of $14 monthly from the infant’s monthly income of $15.54 from the Veterans’ Administration in the future, or in the alternative requests an order directing that the sum of $30 per month be paid over to the Department of Public Welfare from the funds in the hands of the guardian as partial reimbursement of the cost of support furnished said infant until further order of the court.
The application before this court is vigorously opposed by the Veterans’ Administration who has appeared, answered by filing objections, and filed briefs in support of its position. The objection to allowances filed by the Veterans’ Administration states that the infant’s mother received Veterans’ Administration benefits which she paid over to the Department of Public Welfare until 1952, becoming again entitled to benefits in 1955, and the Department of Public Welfare was then requested by the Veterans’ Administration to obtain legal custody of the child. No such action was taken, and in June, 1956, a guardian of the property was appointed. The Department of Public Welfare was informed of the appointment of the guardian and no application for care and support was made to the court until this application.
The lower courts have dealt with claims of this general nature on numerous occasions with considerable inconsistency. Such claims have been held to come under sections 40 and 194 of the Surrogate’s Court Act. (Matter of McCarthy, 160 N. Y. S. 2d 558.) The Veterans’ Administration contends that with *622 reference to past maintenance and support, the following statutes constitute a bar to reimbursement, on the basis that the Department of Welfare, as to such past support furnished, is a creditor only. The statutes referred to are section 3101 of title 38 of the United States Code (based on former § 3001 of June 17, 1957, generally corresponding provisions in earlier laws being contained in § 454, dated June 7, 1924, and § 454a, dated Aug. 12, 1935) and section 667 of the New York Civil Practice Act together with section 104 of the Social Welfare Law (formerly Public Welfare Law, § 128).
Cases favoring the position of the Veterans’ Administration are Matter of Cervantes (174 Misc. 594); Matter of Lancaster (39 N. Y. S. 2d 561); Matter of Witten (109 N. Y. S. 2d 755) and Matter of Beddia (201 Misc. 486); all of which cases rely principally on Matter of Cervantes (supra, p. 596) where it was said, “ The legislative intent to safeguard pension moneys and to make them immune from the claims of creditors have been given full effect by the courts of this State. ’ ’ Since 1918 more stringent Federal statutes have been enacted which are designed to jealously guard the rights of dependents of deceased war veterans.
The facts of this particular case are remarkably similar to those in Matter of Beddia (supra) since in both cases the Welfare Departments had knowledge that payments were made to the guardian on behalf of the infant, but did not see fit to apply for an order for support and maintenance. Speaking of the claim belatedly made for past support, the court in Matter of Beddia stated (p. 489): “Its position now is no different from any other general creditor and as such it cannot recover for past expenditures by virtue of the provisions of section 454-a of title 38 of the United States Code and section 667 of the Civil Practice Act. This part of the application is therefore denied.” The petitioning Welfare Department relies on several decisions, some of which may be disposed of upon distinguishing situations.
In Matter of Rowan (11 Misc 2d 759) the withdrawal of $156.36 from the infant’s funds for past support was granted on consent rather than on a contest such as here confronts the court.
As to Matter of McCarthy (supra) a careful reading of this 1957 opinion of the Surrogate of Kings County discloses that the court was approving a proposed compromise although the language of the opinion would otherwise appear to limit the decision in the Beddia case.
*623 Another ease, Matter of Rivera (175 Misc. 1039, 1041), did not involve a claim for past support, but did find the Surrogate had power to make an order directing application of funds out of the income of the infant’s property or if such was inadequate, out of the principal, in such absence of a claim for past support.
In the case of Matter of Delano (114 N. Y. S. 2d 183) the petitioning Welfare Department made no claim for past support, so the court stated it made no determination on that subject, but did grant an amount in excess of current receipts from the Veterans’ Administration of $31 monthly for current support in the total sum of $51.52 monthly where the infant had assets over $2,300 and the petition showed $3,700 had been spent by the Department of Welfare for his support prior to this application, relying on Matter of Weinberg (201 Misc. 489).
We thus find that Matter of Weinberg (supra) and cases therein cited are petitioner’s main support. In the Weinberg case, the Commissioner of Welfare of the City of New York sought reimbursement for expenditures of $3,841.79 on behalf of each of two infants for the period from August 22, 1946, the date of their guardian’s appointment, to June 30, 1951, and also sought future payments of $77.87 per month, the amount of the current cost of each infant’s support and maintenance. These infants had been public charges since 1941. At the time of the application of the Commissioner, each infant had a fund of $5,452.57, representing accumulations of Veterans’ Administration benefits, then being paid to each child at the rate of $68.55 per month.
In that case, the Veterans’ Administration conceded that the sum of $68.55 might be paid over to the Department of Welfare, but requested the court to limit such payments to that sum which was the current monthly benefit from the Veterans’ Administration to each infant.
There, where the infant’s means were substantial, the court saw fit to award the reimbursement claimed as well as the current monthly payment requested by the Welfare Department of $77.87, basing its findings on two Appellate Division decisions in this State, as well as holdings in other States where the State statutes applicable here were not controlling.
One of the two Appellate Division’s decisions was Matter of Murphy (227 App. Div. 839) decided 1929 by the Fourth Department which dealt with a request of the Citizens Trust Co. of Utica as committee of an incompetent for instruction as to whether they could pay claims for the support and maintenance of an incompetent. There the court held that claims reasonable *624 in amount and based in good faith for the support and maintenance of the incompetent person after the appointment of the committee might be deemed obligations incurred by the committee, even though there had been no express agreement by the committee in advance to pay them, and might, therefore, be paid out of the funds received from the Government under the World War Veterans’ Act, but the court modified the order below to strike out claims arising from expenditure prior to the appointment of the committee.
The other Appellate Division decision cited was Matter of Simpson (270 App. Div. 902) where a disabled World War I veteran was committed to a State hospital as a patient for lack of veterans’ hospital bed space on May 18, 1934. A committee was appointed November 23, 1935 by the Supreme Court, and was then ordered inter alia to pay to the State of New York such sums as might become due thereafter for the incompetent’s support and maintenance. The respondent became substitute committee, no payment being made to the State for care and maintenance (as previously ordered) and on September 1, 1943, the Commissioner of Mental Hygiene fixed the amount due as $575 for the period November 23, 1935 to August 31, 1943 and billed the committee therefor against $1,100 accumulated disability payments in his hands from the $15 a month received from the Federal Government. The Veterans’ Administration did not appear or oppose the application which was denied below and upon petitioner’s appeal, the Appellate Division reversed, granting the application. The court there stated that section 454-a of title 38 of the United States Code and section 667 of the New York Civil Practice Act did not prevent enforcing such a claim.
The facts on which the latter appellate decision was based and underlying the statement that such a claim was to be paid, indicate that the original committee was under order to pay the State for support and maintenance, while the earlier decision in the Murphy case modified the order to eliminate payments prior to the committee’s appointment.
Another approach of general interest brought to the attention of this court is Matter of Beaman (171 Misc. 578), a 1939 decision of Surrogate Foley, New York County, which recites a meeting of Surrogates and relief agencies regarding claims for relief which would exhaust infants’ estates. As a result, it was determined and agreed that infants’ funds should be protected by the establishment of a minimum reserve. The case itself stated $500 might be a proper average amount and noted that by chapter 463 of the Laws of 1936 the following sentence, *625 now generally embodied in section 104 of the Social Welfare Law, was added to the then Public Welfare Law at section 128: “ No right of action shall accrue by reason of the relief granted to an infant unless at the time such relief was granted the infant was possessed of money and property in excess of his reasonable requirements as described in section one hundred twenty-five of this act.” (Said § 125 has become § 101.)
In the 1939 Beaman case, the infant’s income was $110 annually, which sum the court found less than the infant’s reasonable requirements, stating that to withdraw the income as it accrued in order to satisfy the claim for reimbursement would inevitably lead to the infant becoming a public charge.
In the case now before us, 21 years after the Beaman decision, the annual income of the infant from the Veterans’ Administration is $186.48, the real purchasing power of which sum being no greater than that of the $110 annual income in 1939. Significantly the purchasing power of the infant’s $745.08 principal fund on January 18,1960, would not exceed the 1939 purchasing power of the 1939 average fund of $500.
In view of the small amount involved, and the particular similarity of the facts of this case to the facts of the Beddia case (201 Misc. 486, supra) relating to the failure of the Department of Welfare to ask for a timely order for support and maintenance when it had knowledge of the payment from the Veterans’ Administration, we hold that the application herein made four years later for past reimbursement is at this time that of an ordinary creditor, and as such is barred under the above statutes and the decisions interpreting them.
Petitioner is entitled to reimbursement for support furnished subsequent to January 27, 1960, the date of the petition, to July 1,1960, the date that support ceased, according to information now furnished by the petitioner, at the rate of $14 per month, and should the petitioner, Department of Welfare, again undertake support and maintenance of the said James Lawrence Harp, it shall be entitled to further reimbursement for support hereafter furnished at the rate of $14 a month. Decreed accordingly.