OPINION OF THE COURT
Louis D. Laurino, S.
In this contested accounting proceeding the surety company on the administratrix’ bond moves to dismiss objections filed by the Department of Social Services on the ground that the court lacks jurisdiction to hear the objections. The administratrix joined in the motion.
The administratrix, Jeannette Gahrman, is the mother of the decedent, Mary Lainez. The assets of the estate consist of the proceeds of an insurance policy paid to Mrs. Gahrman as administratrix of the estate.
The decedent, Mary Lainez, died at the age of 17 after being shot by her husband, who then killed himself.
In the accounting proceeding brought on by the administratrix she asked the court to fix and determine counsel fees, to allow her claim for funeral expenses and to determine that she was the decedent’s sole distributee. In connection with the last item, she alleged that the estate of the decedent’s husband was disqualified on the grounds that he killed the decedent and that the decedent’s father, Alexander Gahrman, was disqualified from sharing as a distributee on the grounds that he had abandoned the decedent during her infancy. As the whereabouts of the father was not known, jurisdiction was obtained over him by publication of a citation and a guardian ad litem appointed to protect his interests. The guardian requested that proof of the alleged abandonment be taken and the issue was assigned to a Special Referee to hear and report. While that aspect of the matter was pending, the Department *140 of Social Services moved for leave to intervene and file objections. The basis of the proposed objections was that the administratrix, Jeannette Gahrman, and the father of the decedent, Alexander Gahrman, had both received public assistance which the department would seek to recover from their shares of the decedent’s estate as a "windfall”. The motion was granted and an order entered allowing the filing of objections by the Department of Social Services.
At the time of the department’s motion, the surety company, although served, had not appeared in the proceeding and, consequently, they were not served nor did they appear in connection with the motion.
The Referee subsequently filed a report finding that the father, Alexander Gahrman, had abandoned the decedent.
Thereafter, inquiries to the bank listed in Schedule F as the depository in which the estate assets were kept brought a response from the bank that the bulk of the funds had been withdrawn by the administratrix shortly after the filing of her account. An examination of Mrs. Gahrman was held under SCPA 2211 to determine where the assets were located. She testified that she had spent them. The surety company participated in that examination and thereafter brought on the motion before the court.
It is the surety’s contention that if Mary Lainez were alive and had received the funds she would not be responsible for the assistance granted to her parents for their own needs. (Section 101 of the Social Services Law limits the class of relatives who are liable for the support rendered to others to spouses, parents of children under 21 and stepparents of children under 21 years of age. There is no liability placed on children to support their parents under the present statute.) So, too, it is contended she would not be liable for the support that was paid either directly to her or to her parents or others on her behalf before she received the funds. The basis for this is subdivision 2 of section 104 of the Social Services Law which provides: "No right of action shall accrue against a person under twenty-one years of age by reason of the assistance or care granted to him unless at the time it was granted the person was possessed of money and property in excess of his reasonable requirements, taking into account his maintenance, education, medical care and any other factors applicable to his condition.” Mary Lainez was 17 at the time of her *141 death and the funds in question were not received by her, but rather by her administratrix.
The law and the facts being such, the surety maintains that the estate of Mary Lainez is not involved in the question of Mrs. Gahrman’s liability to repay the claim that the Department of Social Services may have against her and, consequently, the court has no jurisdiction to hear the matter as it is a dispute between two living parties.
The surety’s position is that the facts are similar to those in Schoelles v Zausmer (2 AD2d 979) where the transfer of a suit from Supreme Court to the Surrogate’s Court for moneys loaned was sought on the grounds that the respondents were also executors of decedent’s estate and the loans were made under an agreement whereby the estate would be liable for repayment. Two other proceedings involving the same parties were at that time pending in the Surrogate’s Court. In reversing the Supreme Court’s order of transfer, the Appellate Division stated (p 979), "the transactions here in suit are those of living persons, there being no allegation or claim of any transaction with the decedent. The Surrogate’s Court is without jurisdiction to adjudicate actions at law for recovery of common debts or to enforce ordinary contract obligations”.
It is the position of the Department of Social Services that under subdivision 1 of section 104 of the Social Services Law and the other sections of article 6 of the Social Services Law there is an implied contract that requires the recipient to pay and the department is authorized to seek that repayment from any source available, including an inheritance or bequest in a matter pending in the Surrogate’s Court without resorting to another forum after the bequest or inheritance is paid to the recipient. Subdivision 1 of section 104 reads:
"A public welfare official may bring action or proceeding against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care. Any public assistance or care received by such person shall constitute an implied contract. No claim of a public welfare official against the estate or the executors, administrators and successors in interest of a person who dies *142 leaving real or personal property, shall be barred or defeated, in whole or in part, by any lack of sufficiency of ability on the part of such person during the period assistance and care were received.
"Nor shall the claim asserted by a public welfare official against any person under this section be impaired, impeded, barred or defeated, in whole or in part, on the grounds that another person or persons may also have been liable to contribute.
"In all claims of the public welfare official made under this section the public welfare official shall be deemed a preferred creditor.”
While the issue of jurisdiction was not raised by the parties, there are a number of cases which support the department’s contention.
In Matter of Beaman (171 Misc 578) the department sought in the accounting proceeding to enforce a claim against the interests of an infant who was the beneficiary of the residuary trust which on the special facts existing Surrogate Foley disallowed.
In Matter of Modafferi (174 Misc 789) the decedent’s estate was found liable for relief granted to one of his sons and grandsons. A question arose as to which part of the estate funds were to be liable for the relief. Surrogate Wingate stated (p 790):
"The recipient of the relief was primarily liable therefor and it is merely by reason of his lack of ability to pay that the claim is prosecuted against the estate. 'Any public relief received by such person shall constitute an implied contract’ for its repayment. * * *
"Had the city chosen to wait until the son received his distributive share of the estate before presenting its claim, it could have recovered the payments from these funds. Its contrary election cannot alter the equities of the situation. It is accordingly determined that whereas the estate is liable to the commissioner of public welfare in the first instance, that it will, upon payment, be subrogated to his claim which it will be at liberty and under obligation to set off against the distributive share of the son to whom the relief was paid.”
In Matter of Kasner (175 Misc 832) on the accounting proceeding it was determined that the decedent had sufficient funds during his lifetime to care for his daughter and grand *143 daughter and that consequently his estate was liable for the sum of $1,909 paid to them. Surrogate Wingate went on to hold that the share paid for the benefit of the daughter would be paid out of her intestate share. As to the share paid for the granddaughter, this would be paid out of the general assets of the estate. The Surrogate then directed that either the parties stipulate as to the facts as to what amounts were paid for the daughter’s benefit and what for the granddaughter’s or the court would hold a further hearing to determine the question. (See, also, Matter of McClancy, 182 Misc 866, affd 268 App Div 876, affd 294 NY 760.)
In all of the above cases, except Matter of Beaman (supra), there was a liability on the part of the decedent during his lifetime to pay support for the legatee or distributee under sections 101 and 104 of the Social Services Law or their predecessors as then extant.
However, in Matter of Claiborn (51 NYS2d 543) Surrogate Foley found that the decedent was not liable for the assistance given to her two grandchildren during her lifetime and the claim of the department was disallowed. The Surrogate then went on to order the payment of a judgment the department had recovered against the son of the decedent from his legacy under the will. The judgment was for relief paid to his wife.
In Matter of Lyons (NYLJ, Dec. 10, 1976, p 14, col 3) the decedent was a minor. His mother, Ethel Lyons, qualified as an administratrix and brought on a cause of action for his wrongful death and pain and suffering. The action was settled for $7,500 but the mother refused to execute the necessary papers to account to the Surrogate’s Court because she and the infant had been recipients of assistance, of which more than $5,000 had been allocated to the mother as the head of the family. The department filed a claim against her distributive share.
Surrogate Sobel revoked the letters of administration granted to her, substituted the Public Administrator and after fixing attorneys’ fees, directed the Public Administrator to pay the net balance remaining on the decree to the Department of Social Services "in satisfaction of its claim against Ethel Lyons as a recipient of public assistance 'discovered to have real or personal property.’ (Social Services Law, section 104 [1])” (Matter of Lyons, NYLJ, Dec. 10, 1976, p 14, col 3).
In Matter of Greenberg (NYLJ, Nov. 21, 1975, p 11, col 5) *144 the estates of two sisters were administered by the Public Administrator. A third sister was located and proved to be the sole distributee of the two decedents. A question was raised as to the validity of an assignment against her interests in the estates executed by the sister to the Department of Social Services for the amount of the assistance she had received. Surrogate Sobel held (p 11, col 5): "The validity of the assignment is irrelevant. An adult recipient of public assistance (as distinguished from a relative responsible for another recipient) is liable with or without an assignment when 'discovered to have real or personal property’ (Social Services Law Sec. 104 subd. 1)”.
It is apparent from these cases that the Department of Social Services, when it appears as the creditor of a legatee or distributee of an estate pending in Surrogate’s Court, has enjoyed a different status than that of a common-law creditor or ordinary contract obligee insofar as having its claim determined and enforced in the court is concerned. (Cf. Matter of Stern, 13 Misc 2d 605; Matter of Kaufman, 149 Misc 287; Matter of Ullman, 56 Misc 2d 495; Matter of Goelet, 28 AD2d 149; Matter of Chalaire, 71 Misc 2d 496.)
Either there has been over the years an unwarranted usurpation of jurisdiction by the court in matters dealing with the claims of the Department of Social Services and its predecessors, or there is a basis for the distinction based on law. The court is of the opinion that the latter view is correct.
The distinction arises from the fact that the department cannot be considered a common-law creditor. At common law there was no right to recover for funds given to an eligible recipient (City of Albany v McNamara, 117 NY 168). The right of the department and its predecessors was first granted by the enactment of the predecessor statute to subdivision 1 of section 104 of the Social Services Law in 1901 which was later amended and recodified in 1929 (Matter of Colon, 83 Misc 2d 344). The statute has been construed in a "liberal spirit” by the courts to recognize and enforce the right of recovery of public social services agencies (Matter of Beaman, 171 Misc 578, supra).
As Surrogate Sobel observed in Matter of Colon (supra, p 349) the language used by the framers of the statute is "odd but broad” insofar as it refers to living recipients. In spite of the broadness of the statute, it has not been used to recover from wages or salaries of living recipients or from property *145 gained from such earnings. This has been established as policy.
Instead, the thrust of proceedings brought against living recipients, according to Surrogate Sobel, has been to recover from " 'windfalls’ * * * resulting from personal injury recoveries or inheritances (as legatees or distributees) from another’s estate”. (Matter of Colon, supra, p 349.)
The "odd but broad” language referred to is: "A public welfare official may bring action or proceeding against a person discovered to have real or personal property * * * if such person * * * received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care. Any public assistance or care received by such person shall constitute an implied contract”. (Social Services Law, § 104, subd 1.)
People are not discovered to have property in a void. Property is had (possessed) in a time, place and situation or set of circumstances. The right to inherit from an existing estate is property (CPLR 5201). Until the estate is settled, it is under the aegis of the Surrogate’s Court. As the statute gives such broad powers to the public welfare agency to bring an action or proceeding, it follows that they can bring the proceeding when the property is discovered in an estate in the Surrogate’s Court. The corollary of this is that the court has the jurisdiction to hear such a proceeding or action.
Having established as policy that assistance be recouped by public agencies, the Legislature’s sagacity in enacting such a broad statute can be appreciated. It is a well-documented fact that not all debtors are eager to pay their creditors. This fact has lead to the institution of innumerable lawsuits and the creation of many occupations such as Sheriff, Marshal and collection agent. This being so, it is better to collect at the source, if possible, rather than to wait until tangible property has reached the hands of the debtor. The Legislature has the power to make this possible and has done so in the case of public welfare agencies by enacting subdivision 1 of section 104 of the Social Services Law and its predecessors.
The constitutionality of section 104 of the Social Services Law and related statutes and regulations promulgated under them has been tested in the Federal courts and found not to violate the due process or equal protection clauses of the Constitution (Snell v Wyman, 281 F Supp 853, affd 393 US 323) and is not an issue in this proceeding.
*146 i The department also alleges that prior to filing their motion to intervene, they requested Mrs. Gahrman to execute an assignment of her interest in her daughter’s estate. It is the contention of the department that the provisions of subdivision 1 of section 104 of the Social Services Law regarding an implied contract from the recipient apply to Mrs. Gahrman’s actions as an administratrix and as an individual. The department contends that these actions are so intertwined as to be inseparable and that on this basis the court could exercise its jurisdiction in equity on the basis of the jurisdiction granted by SCPA 201 alone.
In view of the court’s finding that it has jurisdiction under the broad provisions of the first sentence of subdivision 1 of section 104 of the Social Services Law, there is no reason to pass on this contention.
Accordingly, the motion to dismiss the objections of the Department of Social Services for lack of jurisdiction is denied.