## 69512. COX v. DEPARTMENT OF HUMAN RESOURCES.
### (330 SE2d 120)

POPE, Judge.

The Georgia Department of Human Resources (DHR) instituted this action against appellant, the natural mother and custodial parent of her illegitimate minor child, Calvin Cox. Appellant received public

assistance from DHR for the child and herself in the form of Aid to Families with Dependent Children (AFDC) until she became disqualified upon her receipt of a lump sum payment of $7,500 as the named beneficiary on a life insurance policy. This action was brought in the name of the minor child pursuant to the Child Support Recovery Act (see OCGA § 19-11-7 (a)) to recover $6,853 of AFDC funds which were paid to appellant on behalf of the child. The trial court found in favor of DHR and entered a judgment for the amount sought with interest, providing that no monies designated as appellant's full standard of need during her period of ineligibility under the AFDC "Lump Sum Rule" shall be subject to execution, levy, attachment, garnishment or other legal process for the purposes of collection of the judgment. This appeal ensued.

The parties stipulated to the following facts: that appellant is the mother and custodial parent of Calvin Cox; that she received AFDC benefits for herself and her child; that no such benefits were being provided at the time of this lawsuit; that the $6,853 reflects the amount of such benefits that remain unreimbursed to DHR; that no contract or agreement was entered into between appellant and DHR other than the one signed at the time appellant applied for AFDC benefits; and that no administrative hearing has been held in this case pursuant to OCGA Ch. 19-11. The trial court concluded as a matter of law that the debt created under OCGA § 19-11-5 upon the payment of public assistance is jointly and severally owed by both parents unless, and except to the extent, the duty of one parent has been otherwise or further defined by court order; that appellant is liable for the debt created under OCGA § 19-11-5; that DHR complied with the constitutionally mandated requirements of due process and equal protection; that the monies budgeted under the "Lump Sum Rule" in declaring appellant ineligible for further AFDC benefits are not subject to execution, levy, attachment, garnishment or other legal process in collection of this judgment; and that DHR may elect to maintain a civil action in this matter rather than proceed in an administrative hearing.

1. Appellant first argues that AFDC benefits in Georgia are issued as a grant to the recipient household and any debt to the state created by those benefits is owed exclusively by the absent, non-custodial parent. Appellant bases this argument on OCGA § 19-11-6, 42 USCA § 602 (a) (26), and 45 CFR § 232.11 (a) (all of which provide that as a condition of eligibility for AFDC benefits the recipient must assign to the state any rights to child support the recipient may have), and DHR's "Assistance Payments Manual" (which notes that pursuant to the foregoing state and federal legislation and regulations "[t]he absent parent whose child(ren) receives AFDC has incurred a debt to the State because of his failure to support his child(ren). The

AFDC recipient's rights to child support shall be assigned to the State in payment of this debt . . .").

OCGA § 19-7-24 provides: "It is the joint and several duty of each parent of an illegitimate child to provide for the maintenance, protection, and education of the child until he reaches the age of majority, except to the extent that the duty of one parent is otherwise and further defined by court order." Clearly, appellant in this case is obligated to provide support for her minor child. The record contains no court order legitimating the child or directing any other person to share this duty. See generally *Thorpe v. Collins*, 245 Ga. 77 (2) (263 SE2d 115) (1980). The Child Support Recovery Act provides: "The payment of public assitance to or on behalf of a child creates a debt due and owing the state by the parent or parents responsible for the support of the child. The amount of the debt is the amount necessary to meet the total needs of the child or children and the person having custody, if included in the public assistance grant, as determined by the department [DHR] in conformity with the federal Social Security Act; provided, however, that, where a court has ordered child support incident to a final divorce or in a criminal proceeding for nonsupport or where the responsible parent has entered into a legally enforceable and binding agreement, the debt created shall be equal to the amount set in such decree, order, hearing, or agreement." OCGA § 19-11-5. Since appellant in this case is obligated by law to support her minor child, any public assistance provided to her for that support creates a debt under this Act due and owing the state by her, in the absence of a court order or other agreement to the contrary. We find no conflict between these statutes obligating appellant for the support of her minor child and the state and federal statutory and regulatory scheme cited by appellant. The statutes and regulations cited by appellant merely provide one method by which AFDC benefit payments may be recovered under the Act. There is no indication in these statutes and regulations that the method of recovery specifically provided therein — the recipient's assignment of all rights to child support payments from an absent, non-custodial parent — is the exclusive method of recovering on the debt declared to be due and owing the state pursuant to OCGA § 19-11-5. We conclude that the trial court did not err in holding as a matter of law that appellant is responsible under OCGA § 19-11-5 for reimbursement of the AFDC benefits she was paid on behalf of her minor child. See also *Young v. Dept. Human Resources*, 148 Ga. App. 518 (251 SE2d 578) (1978).

2. Appellant next argues that DHR in this case has violated the federal statutes governing aid to families with dependent children (42 USCA § 601 et seq.) by seeking recovery of AFDC benefit payments from former recipients in the absence of a state statute so providing. As noted in Division 1 of this opinion, the Child Support Recovery

Act, specifically OCGA § 19-11-5, provides for such recovery. Clearly, nothing in the Act is intended to conflict with any federal law (OCGA § 19-11-24), and we perceive no conflict between this Act, and the actions taken by DHR thereunder, and the federal statutes and regulations cited by appellant. See *Snell v. Wyman*, 281 FSupp. 853 (12) (S.D.N.Y. 1968), affd., 393 U .S. 323 (89 SC 553, 21 LE2d 511) (1969). It follows that the district attorney's office did not act ultra vires in assisting DHR in bringing this action. OCGA § 19-11-23.

3. Appellant contends that the trial court's determination that she is liable for reimbursement of AFDC benefits violates her constitutional right of due process because she had no actual or constructive notice of such liability. She relies on the recent case of *Burns v. Swinney*, 252 Ga. 461 (314 SE2d 440) (1984), as supporting her contention that she was entitled, prior to the initiation of this lawsuit, to notice of DHR's claim against her for recovery of the AFDC benefits and an opportunity to be heard. In *Burns v. Swinney* the Supreme Court held "that where parents are divorced and custody is awarded to one parent, where the parent not having custody has not been ordered by any court to pay child support, and where the nonpaying parent's address is known or can be ascertained, the state, although not required to make an investigation as to the nonpaying parent's ability to support the child before making AFDC payments, see OCGA § 19-11-10 (c) (Code Ann. § 99-909b), must notify the parent of the duty of support and of the application for AFDC payments before such parent becomes obligated to reimburse the state for such payments. We do so for two reasons. First, to protect parents not otherwise subject to a court order or agreement as to child support, so that such parents may contest eligibility for AFDC payments or keep records of the support they in fact are providing. A parent should not be liable to the state for AFDC payments made, without notice to the parent, to ineligible recipients or when the parent is in fact paying for the support of a child. Second, we do so because the failure to provide for notice and an opportunity to be heard could render the state's right of recovery unconstitutional for lack of notice and due process." Id. at 464.

The due process claim in the case at bar is clearly distinguishable from that propounded in *Burns v. Swinney*, supra. In the instant case appellant, as the recipient, obviously had notice of her own receipt of AFDC benefits, whereas in *Burns v. Swinney* DHR sought recovery of AFDC benefits from a parent who had no knowledge that such benefits had been paid. Appellant asserts, however, that at the time of her application for AFDC benefits, and at every re-certification thereafter, she was repeatedly informed that the debt to the state incurred under OCGA § 19-11-5 as the result of her receiving such benefits was owed exclusively by the absent, non-custodial parent. A careful review

of the record on appeal, however, discloses no proof of this assertion. Rather, as noted in Division 1, supra, while there is repeated reference to the debt incurred by the non-custodial parent under OCGA § 19-11-5, there is no indication that the debt is *exclusively* that of such parent.

In *Medsker v. Adult &c. Svcs. Div.*, 42 Or. App. 769 (601 P2d 865) (1979), the Court of Appeals of Oregon reviewed an administrative decision which upheld a determination that a child support payment made to the Adult & Family Services Division of the Oregon Department of Human Resources by Mrs. Medsker's former husband was properly retained by the Division for application to arrearages for past unpaid support rather than disbursed to her for current support. Mrs. Medsker asserted a denial of due process and, in addressing this claim, the court held: "It is important to notice what is and what is not being claimed by the petitioner. She does not challenge the validity of the state statutes and regulations that are designed to accomplish reimbursement. She does not assert that she was denied due process of the sort called 'the requirement of notice and an opportunity to be heard.' See *Fuentes v. Shevin*, 407 U. S. 67, 80-82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). She does claim that had she been given 'proper notice in advance' she would have had the possibility of making an arrangement with her former husband so that the events giving rise to the disadvantage over application of the unchallenged statutes and regulations would not have occurred. Therefore, she says, she was deprived of due process because the state failed to give her that notice.

"3. Petitioner has cited us to no case which holds that the state is under a due process obligation to give persons subject to its statutes and regulations explicit and direct notice of their content and application, and it takes little imagination to visualize the chaos that would result if that idea were to be imported into the body of procedural due process law. Unlike garnishment of wages, replevy of chattels, termination of welfare benefits or termination of public employment, the situation here is not one where some sort of systematic, advance opportunity for contest is required to ameliorate the risk of erroneous deprivation. While it is true that petitioner had an interest in her ex-husband's payments to the state which was 'more than an abstract need or desire for it' and perhaps 'more than a unilateral expectation of it,' it is also true that whatever 'legitimate claim of entitlement' (see *Board of Regents v. Roth*, 408 U. S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)), she had, nothing was taken from her because she lacked notice. Put simply, the facts fit the applicable law, and she does not claim otherwise. It was not deprivation of due process that she was not afforded a notice that might have allowed the facts to have been changed." Id. at 774-75 (601 P2d at 867-

68). While the situation in *Medsker* is somewhat distinguishable factually from the case at bar, we find appellant's due process claim in this case to be essentially the same as that considered and rejected by the Oregon court. We are thus persuaded that no deprivation of due process occurred simply because appellant, like Mrs. Medsker, was not given explicit and direct notice of the content and application of the statute, in this case OCGA § 19-11-5, to her circumstances.

4. The parties stipulated as to the amount of the AFDC benefits which have not been reimbursed to DHR. This amount, in the absence of a court order or other agreement, is declared by OCGA § 19-11-5 to be the amount of the debt due and owing the state, as well as the amount necessary to meet the total needs of the child and the person having custody. Nevertheless, appellant assigns error to the trial court's entry of judgment against her in this case without receiving evidence of her financial status and ability to repay and without consideration of her service to the child as primary caretaker. We find these matters irrelevant to the case at bar.

There is nothing in the Child Support Recovery Act which makes the state's recovery of the debt incurred by a recipient of AFDC benefits under OCGA § 19-11-5 contingent upon said recipient's "financial status" and "ability to repay." We note in passing, however, that it is highly unlikely that DHR would have instituted this action if appellant had not received the $7,500 lump sum payment as the named beneficiary on a life insurance policy. In the absence of this windfall, appellant's status as a recipient of AFDC payments would militate against the cost-effectiveness of a lawsuit based on OCGA § 19-11-5. Furthermore, appellant surely does not contend that she is entitled to a reduction in the amount of this debt for the value of her services as "caretaker" of her minor child. The purpose underlying AFDC benefit payments is to help maintain and strengthen family life and to help parents of needy, dependent children "to attain and retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection. . . ." 42 USCA § 601. It is not the purpose of AFDC benefit payments to "reimburse" a parent for services rendered in "taking care" of her minor child.

We find no ground for reversal of the judgment of the trial court for any reason assigned.

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley and Sognier, JJ., concur. Beasley, J., concurs in the judgment only. Benham, J., dissents.*

BENHAM, Judge, dissenting.

Having profound misgivings as to the far-reaching implications of the majority opinion and the conclusions reached in Divisions 3 and

4, I respectfully dissent.

The factual posture of the proceedings below is sufficiently explained in the majority opinion and needs no further explanation here.

While I do not take issue with the statutory obligation to reimburse provided for in OCGA § 19-11-5 and as discussed in Divisions 1 and 2 of the majority opinion, I do take issue with the procedural framework for collection authorized in Divisions 3 and 4. At common law, public welfare agencies had no right of recovery for public assistance given to eligible recipients. *Re Estate of Lainez*, 422 NYS2d 849 (102 Misc. 2d 138) (1979). Present-day schemes of recovery are statutorily created and should not only be strictly construed, but should be viewed in light of contemporary due process requirements.

To fully appreciate the problem posed by the majority opinion, a brief review of the legislative history concerning welfare recovery statutes is illuminating. The first recovery statute was provided for in Ga. Laws 1973, p. 192, Sec. 4, which provided: "The payment of public assistance to or on behalf of a dependent child creates a debt due and owing the State by the parent or parents of the child; provided, however, that where a court has ordered child support incident to a final divorce decree or other final order for child support, the debt shall be limited to the amount specified in the decree or order. *This liability shall attach only with respect to the period of time during which public assistance is granted and only if the parent or parents were financially able to furnish support during this period.*" (Emphasis supplied.) This provision was supplanted by Ga. Laws 1976, p. 1537, Sec. 4, which struck Section 4 in its entirety and provided, in part, that: "The amount of the debt is the amount necessary to meet the total needs of the child or children, and the person having custody, if included in the public assistance grant, as determined by the Department in conformity with the Federal Social Security Act; provided, however, that where a court has ordered child support incident to a final divorce decree or in a criminal proceeding for nonsupport, or other similar proceeding, the debt shall be limited to the amount specified in the decree of order." In the subsequent sections, an administrative procedure was set up for determining ability to support.

The most recent enactment (Ga. Laws 1977, p. 643, Sec. 1) is quoted in the majority opinion, but no mention is made as to the preambular language of the legislative enactment, which is as follows: "An act to amend an Act known as the 'Child Support Recovery Act' approved March 28, 1973 (Ga. L. 1973, p. 192) as amended, so as to make the amount of the debt created by payment of public assistance to or on behalf of a child equal to the amount specified in the court order or decree where such a court order or decree exists; to *provide that the debt owed the State by the individual responsible for sup-*

*port may be established by legal process other than court order or decree, such as an administrative hearing or a legally enforceable and binding agreement. . .*" (Emphasis supplied.) There is a clearly distinguishable thread coursing through each enactment, favoring some type of administrative notice and due process procedure.

The pivotal case in this area, which is mentioned by the majority opinion, but inappropriately distinguished, is *Burns v. Swinney*, 252 Ga. 461 (314 SE2d 440) (1984). While *Burns v. Swinney* makes reference to the "non-custodial parent," the principles are equally applicable to the custodial parent. Hence, it is inconceivable that the courts would accord the absconding parent more procedural rights than the custodial parent. *Burns*, at 464, requires a notice of the duty to support so that the parent may keep records of the support provided as required by OCGA § 19-7-24. In *Burns*, the Supreme Court clearly stated the reason for such a notice requirement: "[W]e do so because the failure to provide for notice and an opportunity to be heard could render the state's right of recovery unconstitutional for lack of notice and due process."

The majority opinion seeks to distinguish *Burns v. Swinney* by stating that the appellant here, who was the recipient, had notice of the application for AFDC; however, the majority opinion fails to address the second requirement, which is notice of the obligation to repay. This lack of notice rendered the procedure below fatally flawed, and I would reverse the judgment of the trial court.

DECIDED MARCH 14, 1985 —

REHEARING DENIED MARCH 29, 1985 — 

*Gregory W. Valpey-Toussignant, Phyllis J. Holmen, John Cromartie, Nancy R. Lindbloom, Mary R. Carden*, for appellant.

*William F. Riley, Jr., Assistant District Attorney, Mary Foil Russell, Staff Assistant Attorney General*, for appellee.