## 42294. COX v. DEPARTMENT OF HUMAN RESOURCES.
### (334 SE2d 683)

GREGORY, Justice.

The Georgia Department of Human Resources (DHR) provided public assistance in the form of Aid to Families with Dependent Children (AFDC), OCGA § 49-4-100 et seq., to petitioner Cox and to her illegitimate minor child. It is not disputed that petitioner is the custodial parent of the minor child, and that the child's father, who is absent from the home, does not provide child support. When petitioner received $7,500 as the named beneficiary of a life insurance policy, she became disqualified to receive further AFDC benefits.[1] The DHR then initiated this action on behalf of the minor child against petitioner, pursuant to the Child Support Recovery Act, OCGA § 19-11-1 et seq., to recover $6,853 paid to petitioner for the benefit of the minor child. The trial court entered judgment in favor of the DHR and the Court of Appeals affirmed. *Cox v. DHR*, 174 Ga. App. 377 (330 SE2d 120) (1985). We granted certiorari, and reverse.

The Child Support Recovery Act, OCGA § 19-11-5, provides:

"The payment of public assistance to or on behalf of a child creates a debt due and owing the state by the parent or parents responsible for the support of the child. The amount of the debt is the amount necessary to meet the total needs of the child or children and the person having custody, if included in the public assistance grant, as determined by the department in conformity with the federal Social Security Act; provided, however, that, where a court has ordered child support incident to a final divorce or in a criminal proceeding for nonsupport or where the responsible parent has entered into a legally enforceable and binding agreement, the debt created shall be equal to the amount set in such decree, order, hearing, or agreement."

The Court of Appeals concluded that under OCGA § 19-7-24,[2] petitioner was required to provide support to her illegitimate minor child until he reaches the age of majority. Therefore, the Court of Appeals concluded that petitioner was liable for the debt created by OCGA § 19-11-5.

Under the Public Assistance Act of 1965, OCGA Ch. 49-4 et seq., Ga. Laws 1965, p. 385, the Department of Human Resources is authorized to establish certain categories of public assistance, including Aid to Families with Dependent Children. OCGA § 49-4-3 (a) (4). The purpose of the Act is to "[p]rovide for maximum cooperation with

---

[1] This determination is not at issue in this appeal.

[2] OCGA § 19-7-24 provides, "It is the joint and several duty of each parent of an illegitimate child to provide for the maintenance, protection, and education of the child until he reaches the age of majority, except to the extent that the duty of one parent is otherwise or further defined by court order."

other agencies, public and private, of this state, or other states, and of the federal government[3] in rendering services to *maintain and strengthen family life and to help applicants for public assistance and recipients thereof to attain self-support or self-care.*" OCGA § 49-4-3 (b) (1). (Emphasis supplied.)

To be eligible for public assistance under AFDC, a child must be "dependent" within the meaning of OCGA § 49-4-101 (2). That is, he must be under 18 years of age, meet certain educational and residential requirements, and be "deprived of parental support or care by reason of the death, continued absence from home or physical or mental incapacity of a parent. . . ." The Act thus contemplates that AFDC is to be provided where a parent, because of death, or physical or mental incapacity, is not *able* to provide support for the child, or by his continued absence from the home has chosen to not provide support. The legislature has determined that in these circumstances, the dependent child's family life with the custodial parent (or other specified relations, see OCGA § 49-4-101 (2) (C)) may be strengthened, and the self-sufficiency of the family unit encouraged, by a grant of public assistance.

The goals are consistent with the purposes of The Child Support Recovery Act which are "to provide that public assistance to needy children is a *supplement*" to the parental contribution, and "to provide for the enforcement of an *able* parent's obligation to furnish support." OCGA § 19-11-2 (a). (Emphasis supplied.) Thus the goals of both AFDC and The Child Support Recovery Act are to strengthen family life, to encourage a parent *able* to provide support to contribute to the family unit, and ultimately, to assist the family unit in attaining self-sufficiency. OCGA §§ 49-4-3 (b) (1) and 19-11-2 (a).

We conclude that these expressed legislative purposes are inconsistent with the interpretation the Court of Appeals has given to OCGA § 19-11-5. Where, as in this case, there is an absent parent who does not provide support, and the payment of public assistance is for the support of both the dependent child and the custodial parent who is *not* able, without the benefit of public assistance, to provide sup-

---

[3] One stated purpose of the Act was "to express legislative intent with respect to interpretation of the Act consistent with the requirements of the Federal Social Security Act." Ga. Laws 1965, p. 385. OCGA § 49-4-18 provides that it is the intention of the General Assembly that the Act "be construed consistent with the federal Social Security Act. . . ." Subchapter IV, Part A of the federal Social Security Act, 42 USCA § 601 et seq., provides for grants to states for Aid to Families with Dependent Children. This program creates a scheme of cooperative federalism, the purposes of which are "encouraging the care of dependent children in their own homes or in the homes of relatives . . . , to maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection. . . ." 42 USCA § 601. See *Shea v. Vialpando*, 416 U. S. 251 (94 SC 1746, 40 LE2d 120) (1974).

port and maintenance for the child, it is inconsistent with both the goals of The Public Assistance Act and The Child Support Recovery Act to conclude that the payment of AFDC imposes upon the *custodial* parent "a debt due and owing the state." OCGA § 19-11-5. In this case the dependent status of the minor child, within the meaning of OCGA § 49-4-101 (2), is created *solely* by the continued absence from home of the father. The mother, petitioner here, has done nothing to contribute to this dependent status.[4]

If this custodial parent is required to repay a debt of $6,853 from the $7,500 proceeds of the insurance policy, there is every reason to believe she and the child will almost immediately become eligible for a new grant of Aid to Families with Dependent Children. On the other hand, if she is free of debt, the $7,500 nest egg may afford the opportunity for this petitioner to "attain self-support or self-care" for herself and her child on a permanent basis, and thereby break the cycle of public assistance. The facts of this case are quite compelling, but hypothetical situations can be envisioned which virtually demand the construction now given the statute, and the legislative intent attributed to the Georgia General Assembly. For example, suppose the mother and infant child lived alone because of the desertion of the husband and father. Due to their desperate financial position a grant from the county Department of Family and Children Services of $105 per week is made. This continues for two years until the child reaches school age. A total of $10,920 is paid out. Because the child is in school the mother is able to obtain employment at a local motel as a housecleaner for $115 per week. The grant is terminated, but the family is better off by $10 per week. Then comes the sheriff to garnish the wages of the mother to pay the debt to DHR. After deduction for the garnishment the mother receives $100 per week. Now she is worse off than when receiving aid. There is no incentive to be self-supporting.

A debt under OCGA § 19-11-5 is created when a child receives public assistance because he has been deprived of parental support or care by reason of the inability of a parent to provide support, or continued absence from home of a parent or parents who fail to provide support. OCGA § 49-4-101 (2) (B). That is why "the amount of the debt is [1] the amount necessary to meet the total needs of the child or children *and the person having custody,* if included in the public assistance grant. . . ." or [2] the amount of child support judicially imposed on a parent who is absent from the home by reason of divorce, or [3] the amount by which the custodial parent and the absent

---

[4] We acknowledge that where public assistance is paid to a child whose dependent status is created by the continued absence from home of *both* parents, a debt is created under OCGA § 19-11-5 "due and owing the state by the . . . *parents* responsible for the support of the child." (Emphasis supplied.) See also footnote 5, infra.

parent have contractually agreed to. OCGA § 19-11-5. (Emphasis supplied.) The tenor of the remaining provisions of the Child Support Recovery Act buttresses our conclusion that the legislature intended for the DHR to recover public assistance from a parent, or parents, who is not only *able* to provide support, but whose continued absence from the home has resulted in the child's dependent condition.[5] OCGA § 19-11-6 (a) provides that the acceptance of public assistance constitutes an assignment by the recipient to the DHR "of the right to any child support owed for the child."[6] Subsection (b) of § 19-11-6 provides that if the grant of public assistance ceases, the DHR "may continue to collect such support payments from the *absent* parent."[7] (Emphasis supplied.) Under OCGA § 19-11-9 the legislature requires the DHR to "attempt to locate absent parents" in order to determine their child support obligations. OCGA § 19-11-12 sets forth the standards for determining whether "the absent responsible parent" is able to support his child.[8]

We hold therefore that in enacting OCGA § 19-11-5, the legislature did not intend for the custodial parent to be liable for the debt created by the payment of public assistance where the custodial parent is not able to provide parental support or care without the benefit of public assistance. OCGA §§ 19-11-2 (a) (3); 49-4-101 (2) (B). Therefore, the judgment of the Court of Appeals must be reversed.[9]

*Judgment reversed. All the Justices concur except Marshall, P. J., and Weltner, J., who dissent.*

WELTNER, Justice, dissenting.

1. (a) One of the purposes of the Child Support Recovery Act, OCGA § 19-11-1 et seq., is plainly stated at § 19-11-2 (a) (3), as fol-

---

[5] We do not here deal with a situation where the custodial parent is able, but unwilling to provide for the child. The DHR is given broad authority under the CSRA to determine whether the parent is able to support the child. OCGA § 19-11-10. If the DHR determines the parent is so able, it is authorized to take appropriate action to ensure that the parent supports the child. OCGA § 19-11-8.

[6] We note that the DHR's petition against Ms. Cox maintains that by accepting public assistance on behalf of her minor child, Cox has, pursuant to OCGA § 19-11-6, assigned to the DHR all her legal remedies against *herself* for past child support.

[7] The DHR's "Assistance Payments Manual" provides: "The *absent* parent whose child(ren) receives AFDC has incurred a debt to the state because of his failure to support his child(ren). The AFDC recipient's rights to child support shall be assigned to the state in payment of this debt." (Emphasis supplied.)

[8] We point out that 42 USCA § 651 of the federal Social Security Act authorizes appropriations to the states "for the purpose of enforcing the support obligations *owed by absent parents*." (Emphasis supplied.)

[9] *DHR v. Bagley*, 240 Ga. 306 (240 SE2d 867) (1977), cited by the respondent, and *Young v. DHR*, 148 Ga. App. 518 (251 SE2d 578) (1978), cited by the Court of Appeals, are distinguishable. In *Bagley*, this court acknowledged that pursuant to OCGA § 19-11-6 the DHR is subrogated to any child support rights a custodial parent who receives child support might have. In *Young*, the Court of Appeals relied on *Bagley* to reach the same result.

lows: "The underlying purposes of this article are . . . To provide for the enforcement of an able parent's obligation to furnish support."

(b) The same code section provides, at subparagraph (b): "This article shall be liberally construed to promote its underlying purposes."

(c) OCGA § 19-11-3 (5) of the Act provides: "As used in this article, the term . . . 'Parent' means the natural or adoptive *parents* of a child and includes the father of a child born out of wedlock. . . ." (Emphasis supplied.)

(d) The statutory basis for the claim of recovery against the mother in this case is OCGA § 19-11-5, which provides in part: "The payment of public assistance to or on behalf of a child creates a debt due and owing the state by the parent or *parents* responsible for the support of the child." (Emphasis supplied.)

2. The following facts are undisputed:

(a) Cox is the natural mother of the child, and

(b) the child was born out of wedlock.

3. Applying these plain and unambiguous code sections to the plain and unambiguous facts of this case, only one question remains: Is Cox "responsible for the support of the child" within the meaning of OCGA § 19-11-5?

4. The answer to that question is provided plainly and unambiguously by OCGA § 19-7-24, as follows: "It is the joint and several duty of *each parent* of an illegitimate child to provide for the maintenance, protection, and education of the child until he reaches the age of majority, except to the extent that the duty of one parent is otherwise or further defined by court order." (Emphasis supplied.)

I am authorized to state that Presiding Justice Marshall joins in this dissent.

DECIDED OCTOBER 1, 1985.

*Gregory Valpey-Toussignant, Mary R. Carden, Nancy Lindbloom, Phyllis J. Holmen, John L. Cromartie, Jr.,* for appellant.

*Michael J. Bowers, Attorney General, Mary Foil Russell, Staff Assistant Attorney General,* for appellee.

*M. Kathryn Hoover, William C. Thompson, Richard K. Greenstein, David A. Webster, Mary Margaret Oliver,* amici curiae.