Robert W. Bascom, S.
In these separate proceedings the general guardian of two infants seeks authority to expend funds of the infants for their support and maintenance and to reimburse the Commissioner of Welfare for their support for 17 months prior to the guardian’s appointment. The infants’ estates consist entirely of the proceeds of an award made September 28, 1960 by the Veterans’ Administration as compensation for disability of the infants ’ veteran father, which in each case amounted at the time of the filing of the petition to $1,486.74. Letters of guardianship issued August 5, 1960. The infants since March 1,1959 have been cared for as public charges by the Washington County Welfare Department, in a foster home, at a cost of $11 per week each. Compensation payments are being-received by the guardian for each infant at the rate of $37.80 per month. The Commissioner of Welfare and the Veterans’ Administration are parties to the proceedings and the petition alleges that it was made at the former’s request. As of October 1,1960 the Commissioner had expended $1,338.96 for care of the infant Timothy, and $1,383.41 for the infant Patrick Dugan.
Both the guardian and the Commissioner take the position that reimbursement should be made to the Commissioner for expenditures prior to the guardian’s appointment, as well as for current and future expenses, to the extent funds are available. The Veterans’ Administration objects to any allowance for maintenance prior to the guardian’s appointment but makes no objection to an allowance since that date, provided a reserve of about $1,500 is maintained in each infant’s estate.
*982 The guardian and the Commissioner cite no authority for their position except Matter of Weinberg (201 Misc. 489) and section 194 of the Surrogate’s Court Act. A reading of the Weinberg decision, however, indicates that it is authority only for the proposition that benefits of the type here involved may be ordered applied to reimbursement of a welfare agency for moneys expended from and after the date of the guardian’s appointment, and the very first sentence of the opinion indicates that nothing was sought for expenses prior thereto. The cited section of the Surrogate’s Court Act so far as here material merely authorizes in a proper case the making of an order authorizing the guardian to apply the infant’s property to its support and education. It does not authorize such application if the funds sought to be applied are exempt under other laws.
The Veterans’ Administration urges that subdivision (a) of former section 3001 (previously § 454a), now found in subdivision (a) of section 3101 of chapter 53 of title 38 of the United States Code, and section 667 of the Civil Practice Act prevent payment of reimbursement for the period before the guardian’s appointment. The former section provides that benefits paid under any law administered by the Veterans’ Administration shall be exempt from the claims of creditors and shall not be liable to seizure by or under any legal or equitable process whatever, either before or after the receipt by the beneficiary. The indicated section of the Civil Practice Act exempts from execution and seizure in any legal proceeding a “ pension or other reward heretofore or hereafter granted by the United States ”. The statutes throw a mantle of protection around the moneys here involved, which was designed to protect the recipient against pauperism, claims of creditors, or his own imprudence, and to permit him or his dependents to obtain the necessities of life (Matter of Flanagan, 31 P. Supp. 402). They create a situation analogous to a spendthrift trust. They must be enforced according to their spirit.
The Veterans’ Administration also relies on a long line of authorities including Matter of Lancaster (39 N. Y. S. 2d 561); Matter of Shinberg (76 N. Y. S. 2d 334); Matter of Abantantonio (83 N. Y. S. 2d 111); Matter of Witten (109 N. Y. S. 2d 755); Matter of Beddia (201 Misc. 486); Matter of McCarthy (6 AD 2d 1029) and Matter of Beaman (171 Misc. 578). Since all of these except Shinberg and Abantantonio were analyzed, compared and distinguished in a recent decision in Matter of Harp (25 Misc 2d 620), it will serve no purpose so to do again here. Suffice it to say that neither Shinberg nor Abantantonio affords the Commissioner any aid here insofar as expenditures prior to *983 the appointment of the guardian are concerned. The Commissioner also attempts to distinguish the instant matter from Beddia in that there reimbursement was disallowed by reason of laches on the part of the Welfare Department when it had knowledge of compensation benefits being received by the guardian, whereas there is no element of laches in these proceedings. A careful reading of Beddia, however, indicates that reimbursement was sought only for expenditures made after the granting of the award to the infant and not for those made for five years prior thereto, so that any such distinction, in the view we take of these matters, is of no consequence.
As we interpret the above-cited cases and others dealing with the subject, we are impelled to the conclusion that when a guardian receives these exempt moneys he takes them cloaked with the mantle of immunity from the then-existing claims of anyone and everyone other than the United States itself. What he can do with them thereafter, standing as he does in the shoes of the infant, is, subject to the ordinary circumscribing restraints, just what the infant could do with them if not under disability. This obviously includes furnishing or contracting to furnish his ward the necessities of life. He cannot, however, use the moneys for goods or services furnished prior to his appointment.
When the guardian was appointed, the duty devolved upon him to provide the necessities of life for his wards within the limitations of their estates. He chose to let the Commissioner of Welfare continue to provide his wards sustenance, and thereby impliedly contracted with him for that purpose. For this the guardian must pay even from exempt funds, if the claims are reasonable in amount. He cannot, however, pay for the care provided prior to his appointment and for which he is not legally liable (Matter of Murphy, 227 App. Div. 839; Matter of Strohm, 51 Misc. 481). Other jurisdictions are in accord with this view. (See, e.g., Matter of Bemowski, 3 Wis. 2d 133; Matter of Bayly, 95 Cal. App. 2d 174; Matter of Ferarazza, 219 Cal. 668.) No case has been called to our attention and the independent research of the court discloses none which hold otherwise, with the possible exception of Matter of Ttoyman (5 Misc 2d 339). The headnote thereof indicates that a Welfare Commissioner may be reimbursed from the estate of an infant for past expenditures for the infant’s care, where the funds available are moneys received by the guardian from the Veterans’ Administration. It is impossible to tell from a reading of the opinion whether £ 1 past expenditures ’ ’ relate to a time antecedent to the making of the application for reimbursement or *984 whether it is a time prior to the appointment of the guardian. If it means the former, that case is in harmony with the ones hereinbefore cited, other thanSeddia; if it means the latter it is against the great weight of authority and in any event is not controlling here, as it concerned only the approval of a proposed compromise. It is likely that it relates only to past expenditures subsequent to the appointment of the guardian, as it merely refused to follow Beddia, in which case no reimbursement had been sought for expenditures prior to the guardian’s appointment, but where as stated above, “ past expenditures ” subsequent to the appointment of the guardian were denied because of laches.
There is still another reason why the guardian cannot reimburse the Commissioner for expenses incurred for the support of his wards prior to his appointment. Subdivision 2 of section 104 of the Social Welfare Law provides that no right of action shall accrue against an infant by reason of assistance or care granted to him, unless at the time it was granted the infant was possessed of money and property in excess of his reasonable requirements. It is conceded that these infants had no funds prior to the award by the Veterans’ Administration. What the Commissioner of Welfare could not legally collect by suit in his own behalf the court cannot direct be paid to him on application of the guardian.
The orders to be entered herein will provide for payment by the guardian to the Commissioner of Welfare at the rate of $33 per month from the date of the guardian’s appointment, August 5, 1960, and to continue in either case so long as the infant is a public charge, until the further order of the court.