**DEPARTMENT OF HEALTH AND RE-HABILITATIVE SERVICES, STATE OF FLORIDA, Plaintiff-Appellant,**

v.

**Rachel G. DAVIS, as Guardian of the Estate of Arthur Grady Glasscock, Defendant-Appellee.**

No. 78–3652.

United States Court of Appeals, Fifth Circuit.

May 8, 1980.

Donna H. Stinson, Tallahassee, Fla., for plaintiff-appellant.

Azar, Campbell & Azar, W. Clark Campbell, Jr., Montgomery, Ala., for defendant-appellee.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

RONEY, Circuit Judge:

Since 1976 the State of Florida has been taking care of Arthur Grady Glasscock, an adjudicated incompetent, in the Florida State Hospital. Over the years Glasscock's guardian in Alabama has accumulated over $40,000 in social security and veterans' benefits. From these accumulated funds, Florida sought reimbursement of approximately $12,000 for Glasscock's past care and maintenance. The district court, denying relief, held the funds were exempt from creditors under two federal statutes and that Florida was merely a creditor as to its claim for past care and maintenance. We reverse.

Plaintiff, Florida's Department of Health and Rehabilitative Services, is authorized under Fla.Stat. § 394.457(7) (1977) to collect payment for the care of patients in state institutions.[1] The defendant guardian has refused to pay these amounts for Glasscock's care claiming the moneys she holds are exempt under federal social security[2] and veterans' statutes.[3]

---

1. PAYMENT FOR CARE OF PATIENTS.— *Fees for patients in treatment facilities shall be based on a fee schedule prepared and published by the department. Fees shall be collected by the department and be based on cost of care and ability to pay. An unpaid fee shall constitute a lien on the nonexempt property of the patient; however, payment of charges shall not be a prerequisite to treatment. Legal action for recovery of unpaid fees shall be brought by the department or by the Department of Legal Affairs for the department.* Fla.Stat. § 394.457(7) (1977). The complaint in the present case was filed on June 7, 1978. On that date, the applicable statute for the reimbursement of funds was Fla.Stat. § 394.457(7) (1977). Effective June 19, 1978, that section was amended, 1978 Fla.Laws 78–332, and the method for the collection of fees was shifted to Fla.Stat. § 402.33 (1979).

2. The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment,

---

3. See note 3 on p. 830.

The correct construction and application of these two federal statutes are at issue in this case. Counsel revealed at oral argument that Glasscock's veterans' payments have been terminated, and that his social security benefits are now being paid directly to the state.[4] Accordingly, we are concerned only with expenses incurred from August 24, 1976, the date of Glasscock's admission to the state hospital, until the state began to receive direct reimbursement.

There is no problem of tracing here. It has been stipulated that all funds held by defendant since her November 23, 1962 appointment as Glasscock's guardian are derived from social security and veterans' payments. A portion of those funds was received since 1976, while the State of Florida was providing exclusively for Glasscock's care and maintenance, and is still part of the guardian's fund. This case only involves efforts to reach funds received during the time the state was caring fully for the patient.

■ The federal statutes in question seem to bar any judicial action to collect money out of the benefits. The *social security statute* provides that "none of the moneys paid . . . shall be subject to execution, levy, . . . or other legal process, . . ." 42 U.S.C.A. § 407. The *veterans' statute* provides that "[p]ayments . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C.A. § 3101(a).

With regard to the social security statute, the Supreme Court in *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), precluded a state from recovering financial assistance rendered to a person claiming permanent and total disability. *Philpott* is different from this case, however, since there the welfare recipient was capable, at least in part, of providing for his own care, and the state was not acting *in loco parentis*, as it is here. The beneficiary in *Philpott* was merely receiving assistance in providing for himself. Glasscock, however, determined to be incompetent by the Veterans' Administration since February 21, 1952, has been in confinement until the present because he is apparently incapable of caring for himself to any degree. Glasscock has had no needs during the period he has been in the Florida State Hospital that were not met by the state. Accordingly, the state is seeking to have the guardian, who is responsible for overseeing her ward's care and maintenance, do what is required by Florida law: apply the benefits received by the ward for care and maintenance to reimburse Florida for undertaking his care and maintenance. Thus, contrary to the guardian's argument, *Philpott* does not control the outcome of this case.

There are few other authorities, none of which decide directly the question here, but which are somewhat helpful. In *Estate of Vary*, 65 Mich.App. 447, 237 N.W.2d 498 (1975), *aff'd*, 401 Mich. 340, 258 N.W.2d 11 (1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978), the Michigan courts held that the social security statute did not bar the state's access to accumulated social security payments after the beneficiary's death. The Michigan Court of Appeals noted that once the beneficiary dies, the mantle of protection afforded by the social security exemption is no longer need-

garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
42 U.S.C.A. § 407.

**3.** Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account

of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . .
38 U.S.C.A. § 3101(a).

**4.** *See* 42 U.S.C.A. § 405(j); 20 C.F.R. §§ 404.-1601–.1610 (1979).

ed, since the decedent at that point "has no reasonably foreseeable current needs." 237 N.W.2d at 500. *Brown v. Brown,* 32 Ohio App.2d 139, 288 N.E.2d 852 (1972), held that a "request for alimony, different from a claim of a creditor, is unaffected by the exemption set forth in Section 407." 288 N.E.2d at 854 (footnote omitted). The exemption thus could not be used to defeat a familial obligation as distinguished from a claim arising out of a debtor-creditor relationship. *See also Thiel v. Thiel,* 41 N.J. 446, 197 A.2d 354, 356–57 (1964). In *Texas Baptist Children's Home v. Corbitt,* 321 S.W.2d 610 (Tex.Civ.App.—Amarillo 1959, writ ref'd n. r. e.), the court held that a guardian could be compelled to apply social security benefits received by minor children to their maintenance costs in a welfare home.

The purpose of social security benefits for the disabled is to provide for their care and maintenance. The purpose of the social security exemption is to protect social security beneficiaries from creditors' claims. Enacted as part of the original social security legislation, Pub.L. No. 74–271, § 208, 49 Stat. 622, 625 (1935), this exemption evinces a clear legislative purpose of precluding beneficiaries from diverting their social security payments away from the statute's seminal goal of furnishing financial, medical, rehabilitative and other services to needy individuals. 42 U.S.C.A. § 301. Neither the purpose of the benefits, nor the purpose of the exemption, is accomplished by barring Florida from reimbursement. The federal grants are for the purpose of assuring the beneficiary's care and maintenance, and the state seeks nothing more than to apply them to the reasonable cost of Glasscock's care. Fees collected by the Department are calculated according to both the cost of care and the patient's ability to pay, thereby permitting the Department to consider both the beneficiary's present and future needs in setting a fee schedule.

The veterans' exemption, 38 U.S.C.A. § 3101(a), was addressed in *Savoid v. District of Columbia,* 288 F.2d 851 (D.C.Cir. 1961), where the court-appointed guardian of an incompetent veteran received veter-

ans' payments on behalf of her ward. The District of Columbia sought reimbursement for the actual cost of maintenance and treatment. The court, concluding that the District of Columbia was not a "creditor" in such circumstances, held the District was not barred by the statute from securing reimbursement for "the actual cost of the maintenance, including treatment, of the incompetent veteran," during the time of his treatment by the District. 288 F.2d at 852. *See also District of Columbia v. Phillips,* 347 F.2d 795, 796 (D.C.Cir.1965); *State v. Bean,* 159 Me. 455, 195 A.2d 68, 70–72 (1968).

The veterans' payments "are intended primarily for the maintenance and support of the veteran." *Lawrence v. Shaw,* 300 U.S. 245, 250, 57 S.Ct. 443, 445, 81 L.Ed. 623 (1937); *Porter v. Aetna Casualty Co.,* 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407 (1962). Indeed, the provision from which the current version of section 407 is derived described the veterans' payments as "compensation, insurance, and *maintenance and support.*" World War Veterans' Act of 1924, Pub.L. No. 68–242, § 22, 43 Stat. 607, 613 (emphasis added). The current version of section 407 was part of "a bill to safeguard the estates of insane veterans who are incarcerated in various veterans' institutions." 79 Cong.Rec. 8556 (1935) (remarks of Rep. Rankin). As part of that enactment, the Veterans' Administrator was directed to pay benefits to the person "legally vested with the care of the claimant or his estate." Act of Aug. 12, 1935, Pub.L.No. 74–262, § 21, 49 Stat. 607, 609 (current version at 38 U.S.C.A. § 3202(a)). The Administrator was also empowered to pay benefits "to the chief officer of the institution in which [the] veteran is an inmate." *See* 38 U.S.C.A. § 3202(d).

The veterans' benefits exemption has been held inapplicable where a state sought reimbursement for the expenses of continuous hospitalization of a mentally ill dependent of a veteran where the dependent's entire estate consisted of monthly pension payments received by a guardian. *In re Lewis' Estate,* 287 Mich. 179, 283 N.W. 21

(1938). The Supreme Court of Michigan noted in that case,

> The very purpose of a pension, such as in this case, is to provide support for the beneficiary and, in this proceeding for reimbursement, the state, under the statute, is asking no more than the pension was given to provide.
>
> We are not here concerned with actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the state for care and maintenance. Certainly the pension protective law does not intend the fund for the welfare of the beneficiary and then, under restrictions thereof, after receipt by the beneficiary, prevent employment thereof for care and support of the pensioner.

283 N.W. at 24.

Similarly, the guardian of two infants, whose entire estate consisted of the proceeds of an award to their disabled veteran father, was required to reimburse a state foster home for their support. *In re Guardianship of Dugan*, 29 Misc.2d 980, 222 N.Y. S.2d 831 (1961). According to the New York court, "When the guardian was appointed, the duty devolved upon him to provide the necessities of life for his wards within the limitations of their estates." 222 N.Y.S.2d at 834. The federal statute, the court observed, "was designed to protect the recipient against pauperism, claims of creditors, or his own imprudence, and to permit him or his dependents to obtain the necessities of life." 222 N.Y.S.2d at 833 (citation omitted). The statutory exemption is in the nature of a spendthrift trust, according to that court, and contemplates the expenditure of funds solely for the beneficiary's welfare. Florida's claim here is consistent with that purpose.

The statute under which defendant claims veterans' benefits to be exempt and its predecessors have been held to bar attachment of veterans' benefits for satisfaction of local taxes,[5] ordinary creditors' claims[6] and payments for veterans' educational programs.[7] A decision for Florida here has no bearing on those situations. It is not suggested that the state may in any way impair the statute's goal of ensuring that benefits be applied exclusively toward life's basic necessities.

Application of benefit payments to expenses incurred in providing for a veteran's care and maintenance is entirely consonant with the thrust of the 1935 legislation. A decision authorizing payment to a state agency that undertakes full responsibility for a veteran's care and maintenance furthers the federal statute's goals, since states may be encouraged to provide such care, with the knowledge that they will be reimbursed on a reasonable basis.

The Florida statute under which the state seeks reimbursement here expressly provides, "[P]ayment of charges shall not be a prerequisite to treatment." Fla.Stat. § 394.457(7) (1977). Since Glasscock has the ability to pay, however, and the funds held by his guardian were received for his care and maintenance, the state's request for reasonable reimbursement is entirely justified.

Both the social security and veterans' statutes have nearly identical alternate payee provisions, which expressly permit direct payment for the beneficiary's "use and benefit to . . . some other person." 42 U.S.C.A. § 405(j); *see* 38 U.S.C.A. § 3202(a). Counsel informed the Court at oral argument that social security payments are currently being made directly to the state under the alternate payee statute. It would be unjust to preclude the state from seeking reimbursement here simply because the alternate payee provisions were not employed from the outset. We therefore hold that Florida is not precluded from recovery by the terms of the social security and veterans' benefit statutes.

---

**5.** *Lawrence v. Shaw*, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623 (1937).

**6.** *Allen v. Glover*, 293 Ala. 377, 304 So.2d 172 (1974).

**7.** *American Training Servs., Inc. v. Veterans Administration*, 434 F.Supp. 988 (D.N.J.1977).

The district court based its jurisdiction on diversity of citizenship. 28 U.S.C.A. § 1332(a)(1). Plaintiff suggested to this Court that although the issue had not been raised by either the district court or defendant, plaintiff, a state agency, is not a "citizen" for purposes of diversity jurisdiction. *See Moor v. County of Alameda*, 411 U.S. 693, 717–22, 93 S.Ct. 1785, 1799–1802, 36 L.Ed.2d 596 (1973). There is, however, authority in this Circuit to support jurisdiction in a diversity suit between a state agency and a citizen of another state, where the agency is invested with the power to sue and be sued, and possesses other generally recognized corporate powers.[8] Diversity jurisdiction was therefore proper in this case.

The summary judgment is reversed, and the case is remanded for further proceedings in light of this decision. In computing the amount due the Department, the district court should consider only those amounts actually received by defendant during the period of Glasscock's confinement in the Florida State Hospital, and should specifically consider the cost of care and Glasscock's ability to pay consistent with Fla.Stat. § 397.457(7) (1977).

REVERSED AND REMANDED.

---

**8.** *C.H. Leavell & Co. v. Board of Commr's*, 424 F.2d 764 (5th Cir. 1970); *Department of Highways v. Morse Bros. & Assocs., Inc.*, 211 F.2d 140 (5th Cir. 1954); *see Louisiana Highway Comm'n v. Farnsworth*, 74 F.2d 910 (5th Cir.), *cert. denied*, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259 (1935). *See also George A. Fuller Co. v. Coastal Plains, Inc.*, 290 F.Supp. 911 (E.D.La.1968). The Department's general powers are described in Fla.Stat. § 402.34 (1979). The authority of these cases makes it unnecessary to remand the case to the district court, as requested by plaintiff, so that the complaint could be amended to establish federal question jurisdiction under 28 U.S.C.A. § 1331.