**STATE of Louisiana, ex rel. William J. GUSTE, Jr., Attorney General, and Charles W. Tapp, Assistant Secretary, Department of Urban and Community Affairs**

v.

**The FEDDERS CORPORATION, Airtemp Corporation and Climatrol Distributing Corporation.**

Civ. A. No. 81–630–B.

United States District Court, M. D. Louisiana.

Oct. 13, 1981.

---

William J. Guste, Jr., Atty. Gen. of Louisiana, Catherine L. Stagg, Charles L. Patin, Patricia J. Hakes, Asst. Attys. Gen. of Louisiana, Baton Rouge, La., for plaintiff.

Daniel Lund, New Orleans, La., for defendants.

POLOZOLA, District Judge.

This matter is before the Court on motion of the plaintiffs to remand this action back to the Nineteenth Judicial District Court

for the Parish of East Baton Rouge, pursuant to 28 U.S.C. § 1447(c), and to tax all costs of this motion to the defendants. The plaintiffs contend that there is no jurisdiction in this Court either under diversity of citizenship jurisdiction or federal question jurisdiction and therefore the case must be remanded.

The proceedings were instituted by William J. Guste, Jr., in the name and on behalf of the State of Louisiana and on behalf of Charles W. Tapp, Assistant Secretary of the Department of Urban and Community Affairs, seeking to enjoin the defendants from engaging in certain unfair and deceptive trade practices and unfair methods of competition prohibited by the Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401–1418, and to obtain restitution and additional relief for all Louisiana consumers aggrieved by the above practices, under La.R.S. 51:1408. The original complaint alleges that: (1) the Fedders Corporation (Fedders) is in the business of manufacturing and selling temperature control devices; (2) Fedders has sold these appliances in Louisiana since 1972; (3) these appliances have had an unreasonably high rate of failure due to defects in their manufacture; (4) the defendants have been unreasonably dilatory in processing warranty service requests and in supplying dealers and retailers with replacement parts with the result that Louisiana consumers have been unsuccessful in obtaining warranty service of these appliances; and, (5) the defendants have entered into a consent order with the Federal Trade Commission which requires the defendants to correct the defects in the appliances and perform the necessary warranty work, which order the defendants have not complied with. The complaint seeks to enjoin the defendants from selling defective appliances. The complaint also seeks to require the defendants to: (1) refund to Louisiana consumers the purchase price of an appliance that has experienced two or more breakdowns; (2) reimburse retailers and dealers their warranty and service claims; (3) disclose to Louisiana purchasers the defects in the appliances and the slow warranty service; and, (4) disclose to Louisiana purchasers that the defendants' warranties do not include labor charges. Finally, the complaint seeks to: (1) require the defendants to replace or repair promptly any defective appliance belonging to a Louisiana consumer; (2) reimburse any Louisiana purchaser all costs to repair other than ordinary maintenance; (3) pay to the State of Louisiana a reasonable sum to be disbursed by the Louisiana Department of Justice to any Louisiana consumer who has suffered due to the defendants' illegal conduct; (4) provide the plaintiffs with information as to the identity of all Louisiana purchasers since 1972; and, (5) pay the plaintiffs' attorney's fees and all costs of court.

The Louisiana statutory provisions dealing with the Department of Urban and Community Affairs are set forth in R.S. 36:551–559. La.R.S. 36:551 provides in pertinent part:

A. The Department of Urban and Community Affairs is created and shall be a body corporate with the power to sue and be sued. The domicile of the department shall be in Baton Rouge.

B. The [department], through its offices and officers, shall in accordance with law provide assistance to strengthen the capacity of the state, local communities, governments, and area-wide organizations to meet with their own needs through the preparation and implementation of programs of balanced growth and development. The department shall serve as the state clearing house for federal domestic assistance programs and coordinate intergovernmental relations between and among local, state, and federal governmental entities.

The secretary of urban and community affairs is appointed by the governor with the consent of the Louisiana Senate, serves at the pleasure of the governor, and performs his functions under the supervision of the governor. La.R.S. 36:553. The secretary represents the public interest in the administration of the department, and is responsible to the governor, the legislature and the public. He also acts as the agent of the

state in matters concerning federal funds. La.R.S. 36:554. The office of consumer protection which is part of the department, performs the functions of the state relating to consumer protection, including investigating consumer complaints, conducting hearings on commercial practices in the sale of goods or services for consumer use, and advising the attorney general with respect to unlawful methods of competition. La. R.S. 36:558.

The plaintiffs' action is brought pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401–18. That law provides, inter alia, that the office of consumer protection shall advise the attorney general of the state with respect to any unfair method of trade, La.R.S. 51:1404 A(5). The attorney general may bring an action for injunctive relief in the name of the state against a person to restrain the use of an unfair trade practice, La.R.S. 51:1407. Any person who suffers as a result of an unfair trade practice may bring an action individually, but not in a representative capacity, for damages, La. R.S. 51:1409. Under these provisions and *Michaelson v. Motwani*, 372 So.2d 726 (La. App. 4 Cir. 1979) the state alone is entitled to injunctive relief.

■ The plaintiff now seeks to have this suit remanded to state court. On a motion to remand the removing party has the burden of proving that removal was proper and that the federal court has jurisdiction. *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Therefore, the defendants have the burden of showing that, at the time that the petition for removal was filed, the pleadings reflected that this Court had jurisdiction. *American Fire and Casualty Company v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Two issues are presented for the Court's determination. First, whether, at the time that the petition for removal was filed, a federal question was presented; and, second, whether, at the time that the petition for removal was filed, diversity of citizenship jurisdiction existed.

■ The plaintiff has the prerogative of determining the theory of his action and, so long as fraud is not involved, he may defeat removal to the federal courts by avoiding allegations that provide a basis for the assertion of federal jurisdiction. *Sheeran v. General Electric Co.*, 593 F.2d 93 (9 Cir. 1979), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93; *Sanchez v. Trustees of Pension Plan Health & Welfare Plan, & Ed. Fund of United Ass'n of Journeymen & Carpenters of Plumbing and Pipefitters Indus. of U. S. & Canada, Local Union 198, AFL–CIO*, 419 F.Supp. 909 (M.D.La.1976); *Federal Practice and Procedure, Wright, Miller and Cooper*, Vol. 14, § 3722 p. 564. In Vol. 14 *Federal Practice and Procedure, Wright, Miller and Cooper*, § 3722 p. 564 and following, the authors state:

"Some courts have indicated that they will not permit plaintiff to use artful pleading to closeoff defendant's right to a federal forum since it would interfere with Congress' explicit provision for removal. Although it is true that plaintiff is master of his claim and may choose not to assert a federal right that is available and rely only on state law, occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization. For instance, in many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading. If however, there is a choice between federal and state remedies, the federal courts will not ignore the plaintiff's choice of state law as the basis for the action. To do so would contravene the principle that the federal courts are courts of limited jurisdiction and create a discrepancy in practice between original and removal jurisdiction."

Thus, where the plaintiff has a right to relief either under federal law or under state law as an independent source of that right, a federal court on removal proceedings generally may not look beyond the fact of the initial pleading in the state action to determine whether a federal question is presented. However, if Congress has deemed that federal substantive law should altogether preempt and supplant state law, the plaintiff may not by artful pleading defeat Congress' objective. *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551 (S.D.N.Y.1969); *Rettig v. Arlington Heights Fed. Savs. & Loan Ass'n.*, 405 F.Supp. 819 (N.D.Ill.1975).

Congress has legislated in the area of unfair trade practices, 15 U.S.C. §§ 41 et seq., and warranties, Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. The Magnuson-Moss Warranty Act specifically provides that state law is not preempted, and, under *Double-Eagle Lubricants, Inc. v. State of Texas*, 248 F.Supp. 515 (N.D.Tex. 1965), *appeal dismissed*, 384 U.S. 434, 86 S.Ct. 1601, 16 L.Ed.2d 670, *rehearing denied*, 385 U.S. 890, 87 S.Ct. 13, 17 L.Ed.2d 122, state legislation in the area of unfair trade practices is not preempted by federal law. Additionally, federal courts have clearly recognized the enforceability of the Louisiana Unfair Trade Practices and Consumer Protection Law. *Boudreaux v. Puckett*, 611 F.2d 1028, 1032 (5 Cir. 1980); *Gerasta v. Hibernia National Bank*, 411 F.Supp. 176, 193 (E.D.La.1976).

█ A review of the original complaint reveals that the plaintiffs seek recovery squarely under Louisiana law and not federal law. The allegations of the plaintiffs' complaint are controlling and therefore, no federal question is presented. The conclusion of the Court is reinforced by the holding in *Fulton v. Hecht*, 580 F.2d 1243 (5 Cir. 1978), *rehearing denied*, 585 F.2d 520, *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241, that there is no private cause of action for a violation of 15 U.S.C. §§ 41 et seq. Only the Federal Trade Commission can seek to enforce those provisions, and thus, the plaintiffs may not bring an action under those provisions.

The plaintiffs contend that diversity does not exist because the State of Louisiana is a party to this lawsuit. Plaintiffs further contend that since a state is not a citizen of any state, a suit between a state and a citizen or corporation of another state is not an action "between citizens of different states," and thus the federal court has no diversity jurisdiction. *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); *Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971); *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d 1332 (3 Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497.

█ If the state is a real party in interest in this lawsuit, then no diversity exists and the case must be remanded back to the Nineteenth Judicial District Court for the Parish of East Baton Rouge. In considering this question, the Court must bear in mind that diversity jurisdiction presents a problem which is separate and distinct from the immunity of the state under the Eleventh Amendment. Cf. Vol. 13 *Federal Practice and Procedure, Wright, Miller and Cooper* § 3524, p. 85 et seq. The real party in interest, rather than the names of particular parties, is the important factor in determining whether there is diversity jurisdiction. *California, ex rel. McColgan v. Bruce*, 129 F.2d 421 (9 Cir. 1942), *cert. denied*, 63 S.Ct. 157, 317 U.S. 678, 87 L.Ed. 544. In making this determination, the federal courts will be influenced by state decisions dealing with the character and status of state agencies, but ultimately the question is one which the federal courts must answer. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Missouri K. & T. R. Co. v. Hickman*, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901); *Riggle v. State of California*, 577 F.2d 579 (9 Cir. 1978); *Hander v. San Jacinto Junior College*, 519 F.2d 273 (5 Cir. 1975). Federal courts will employ a multi-factored analysis in determining whether a state is the real party in interest. *DeLong Corp. v. Oregon State Highway Commission*, 233 F.Supp. 7

(D.Or.1964), *affirmed*, 343 F.2d 911 (9 Cir. 1965), *cert. denied*, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119; *Krisel v. Duran*, 258 F.Supp. 845 (S.D.N.Y.1966), *affirmed*, 386 F.2d 179 (2 Cir. 1967), *cert. denied*, 88 S.Ct. 1635, 390 U.S. 1042, 20 L.Ed.2d 303. However, the decisions are in great conflict as to which factors are to receive more emphasis. Some of the factors to be considered are: (1) whether state law requires that the action be brought in the name of the state; (2) whether the action will be a benefit or a detriment to the state treasury; (3) whether the department is performing a governmental or proprietary function; (4) whether the department is separately incorporated; (5) the degree of autonomy that the department has over its operations; (6) whether the department has the power to sue and be sued and to enter into contracts; (7) whether the department is immune from state taxation; (8) whether the state has immunized itself from responsibility for the department's operations; and (8) whether the relief sought will inure to the state alone, or whether the judgment will effectively operate in favor of the state. *DeLong* and *Krisel*, supra.

The Department of Urban and Community Affairs (DUCA) is part of the executive branch of the state and has been given broad authority to assist in strengthening the capacity of the state, local communities, governments, and area-wide organizations to meet their own needs through the preparation and implementation of programs of balanced growth and development. The department also serves as the clearing house for federal domestic assistance programs and coordinates intergovernmental affairs between state, local and federal governmental entities. DUCA has authority to make its own policies, promulgate regulations, administer its programs, advise the governor of the operations of the department, publish annual reports, and control the internal structure of the department. La.R.S. 36:554. The secretary has authority to hire and fire personnel, appoint advisory councils and boards, accept gifts on behalf of the department, and do other things necessary in the performance of his job which are not inconsistent with law. La.R.S. 36:554.

■ The Court has concluded, after an analysis of the above factors, that DUCA is an entity of sufficient autonomy that it is a citizen of the state of Louisiana for diversity jurisdiction purposes. The action brought by the plaintiffs clearly does not benefit the state treasury. Instead, the action simply is an effort to make the consumers of Louisiana whole. DUCA is separately incorporated by the state and has the power to sue and be sued. La.R.S. 36:551. DUCA exercises a large degree of control over its operations, has broad authority to carry out its functions, and can enter into contracts.

The Court's conclusion is supported by the U.S. Supreme Court's decision in *Missouri K. & T. R. Co. v. Hickman*, supra.

The statute in the *Missouri* case provided that a civil action could be brought in the name of the state of Missouri and on behalf of the railroad commission. However, the Court determined that Missouri was not the real party in interest since the relief sought did not inure to the benefit of the state alone, nor did the judgment effectively operate in favor of the state. The statute involved in the *State of Oklahoma ex rel. Williams v. Oklahoma Natural Gas Corp.*, 83 F.2d 986 (10 Cir. 1936) case also provided that an action could be maintained in the name of the state. Nevertheless, the court held that the state was not the real party in interest.

La.R.S. 51:1407 provides that injunctive relief can be sought in the name of the state by the attorney general, and under the *Michaelson* decision, supra, only the state can seek an injunction under that provision. While this may suggest that the state is the real party in interest since no cause of action exists for an injunction in favor of a private citizen of Louisiana, nevertheless it is clear that the injunctive relief operates only in favor of Louisiana consumers who are affected by a defendant's unlawful conduct. The Louisiana consumers are the real parties in interest and

558

the state is bringing the action for their benefit.

Support for the Court's conclusion is also found in *Moor v. County of Alameda*, supra, where the U.S. Supreme Court held that a county was a citizen of a state for purposes of diversity jurisdiction. The court placed particular emphasis on the corporate character of a county under California law. See: 411 U.S. 718–722, 93 S.Ct. 1800–1802. Additionally, it was stated in *Department of Health and Rehabilitative Services, State of Florida v. Davis*, 616 F.2d 828 (5 Cir. 1980):

> "The district court based its jurisdiction on diversity of citizenship. 28 U.S.C. § 1332(a)(1). Plaintiff suggested to this Court that although the issue had not been raised by either the district court or defendant, plaintiff, a state agency, is not a 'citizen' for purposes of diversity jurisdiction. See *Moor v. County of Alameda*, 411 U.S. 693, 717–22, 93 S.Ct. 1785, 1799–1802, 36 L.Ed.2d 596 (1973). There is, however, authority in this Circuit to support jurisdiction in diversity suit between a state agency and a citizen of another state, where the agency is invested with the power to sue and be sued, and possesses other generally recognized corporate powers."

616 F.2d at 833.

Finally, in *Kirby Lumber Corp. v. State of Louisiana, through Anacoco-Prairie State Game and Fish Commission*, 293 F.2d 82, 85 (5 Cir. 1961) the court stated:

> "The motion to remand this case to the District Court and order its return to the State Court is controlled entirely by the question of whether Anacoco-Prairie State Game and Fish Commission is in fact a corporation subject to suits against it."

Since DUCA is a corporate body subject to suit, La.R.S. 36:551, the Court has concluded that diversity of citizenship exists. Since there is diversity of citizenship present in this case, plaintiffs' motion to remand must be denied.

Therefore:

IT IS ORDERED that the plaintiffs' motion to remand this case back to the Nineteenth Judicial District Court for the Parish of East Baton Rouge be and it is hereby DENIED.