STATE of Missouri ex rel. James Edward FOLTZ, Individually and on behalf of the class of persons similarly situated, (Appellant),

v.

Paul R. AHR, Director of the Department of Mental Health of the State of Missouri and Mel Carnahan, Treasurer of the State of Missouri, and Ray S. James, Director of Revenue of the State of Missouri, (Respondents).

No. WD 34012.

Missouri Court of Appeals,
Western District.

May 24, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 2, 1983.

Application to Transfer to Supreme Court Denied Sept. 28, 1983.

As Modified Oct. 4, 1983.

Thomas M. Dunlap, Whitlow, Riley, Mariea & Dunlap, P.C., Fulton, for appellant.

Jane P. Jasper, Asst. Atty. Gen., Kansas City, for respondents.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

CLARK, Presiding Judge.

This appeal is taken from the order of the trial court dismissing a petition filed by James Edward Foltz seeking recovery of approximately $7,000.00 appropriated by the state from funds belonging to Foltz. The dismissal sustained the state's contention that the petition failed to state a cause of action. Affirmed.

According to Foltz's petition, he was committed to the custody of the Department of Mental Health on May 23, 1977 and was hospitalized at least through July 1, 1981, the significant date for the purposes of this case. His commitment was under the provisions of § 552.040, RSMo 1969. The petition further alleged that while Foltz was under the custody of the Department of Mental Health, the state removed from his account more than $7,000.00 and paid the sum over to the Director of Revenue claiming Foltz to be liable to the state for the cost of his own care during the period of commitment[1] from August 13, 1980.

Foltz's petition was drawn as a class action and stated six alternative grounds for relief: Mandamus, mandatory injunction, return of money unlawfully had and received, declaratory judgment, accounting and damages. The court did not reach the issue of certification of the class and the order did not explicate the grounds for sustaining the motion by the state to dismiss. It is apparent, however, that the questions require construction and application of certain relevant statutes including Chapter 630, RSMo Supp.1980, the mental health law, and sections of Chapter 552, concurrently enacted, dealing with defendants in criminal cases acquitted by reason of mental disease or defect.

Some review of mental health laws in Missouri must precede consideration of the particular issue in this case. Prior to 1980, the subject of mental health and state hospitals was treated in Chapter 202 of the Missouri statutes. Under §§ 202.240 and 202.265, RSMo 1978, patients possessed of estates were obligated to pay for their own

---

1. The petition did not allege and this record does not permit us to ascertain either the origin of the funds in question or the means employed by the state to accomplish the withdrawal. There is some suggestion that Foltz was receiving social security benefits and that Foltz's account, whatever the source, was in a joint deposit affording state employees access. The parties assume, as do we, that the money belonged to Foltz and that the state appropriated the deposit by self-help and not by judicial process.

support and expenses at state facilities and the Department of Mental Health was authorized to recover costs of patient care not only from the patient, but from those bound by law to provide for the maintenance of such person or from the patient's estate.

The extent of third party liability under the statute was the subject of some litigation. In *Fower v. Fower Estate*, 448 S.W.2d 585 (Mo.1970), it was held that the father of an incapacitated child was obligated for the cost of care in a state mental institution, even after the child reached the age of majority. Also, it had been ruled in *State ex rel. George v. Mitchell*, 230 S.W.2d 116, 120 (Mo.App.1950) that a wife was not liable to support her husband. Relying on this rule, the state in the past has never sought payment from a wife for services rendered to the husband in a state institution.

In 1980, the legislature enacted the Omnibus Mental Health Bill, C.C.S.H.B. 1724, Laws of Missouri 1980, p. 503. The bill repealed Chapter 202 of the statutes in its entirety and replaced it with a new chapter, 630. In general, the new chapter was effective August 13, 1980 as was the repeal of Chapter 202. Among many changes accomplished by the new statute, the obligations for cost of patient care formerly prevailing including the decision in *Fower v. Fower Estate*, supra, were legislatively reversed. Section 630.205, RSMo Supp.1980 eliminates any distinction between spouses' liability and relieves parents from the obligation to pay for the care of children who have attained age eighteen. For other reasons, as set out in detail hereafter, it is § 630.205, RSMo Supp.1980 on which Foltz relies for his claim that he is not responsible to pay the state for his hospitalization during the period in question.

When Foltz was committed to the custody of the Division of Mental Health in 1977, in accordance with § 552.040, RSMo 1969, § 552.080, RSMo 1969 assessed the cost of care for a criminal defendant acquitted by reason of mental disease or defect and committed to hospitalization against the county in which the indictment was found or the information was filed. On the basis of § 202.240, RSMo 1969, which authorized a charge against the assets of the patient for the cost of care in cases of civil commitments, a question arose as to whether Chapter 552 patients could also be so charged, to the extent of their resources. In *Robb v. Estate of Brown*, 518 S.W.2d 729 (Mo.App.1974), this court ruled § 202.240, RSMo 1969 to be inapplicable to criminal cases which were controlled by § 552.080 as then written. Thus, prior to the legislative changes in 1980, a person acquitted of a criminal offense by reason of mental disease or defect, as was Foltz, had no obligation to pay for his own care and treatment and the state had recourse only to the counties to recover its costs.

In the same legislative session of 1980, an amendment of § 552.080 was also accomplished. In its revised form effective August 13, 1980, § 552.080.3(2) reads as follows:

"3. If a person is ordered held or hospitalized by the director of the department of mental health or in one of the facilities of the department of mental health pursuant to the following provisions, the liability for hospitalization shall be paid by the person, his estate or those responsible for his support in accordance with Chapter 630, RSMo:

\* \* \* \* \* \*

(2) Following acquittal because of lack of responsibility due to mental disease or defect under section 552.030, and subsequent order of commitment to the director of the department of mental health under section 552.040."

Beyond question, the amendment to § 552.080 had the purpose of relieving counties from the potential expense for defendants committed after acquittal and the further purpose of fixing liability on the defendants themselves, and those responsible for their support, to pay such expenses. Apart from the modifying phrase, "in accordance with Chapter 630, RSMo," § 552.080, RSMo Supp.1980 does support the state's claim that Foltz and other state patients commit-

ted under § 552.040 are liable for their expenses during hospitalization.[2] The appended phrase, however, engrafts some provisions of Chapter 630 upon the subject of payment for patient care under Chapter 552 commitment, the issue in this case being the extent of applicability of Chapter 630 to fix the effective date of responsibility.

The basis for Foltz's claim that he has no liability to reimburse the state for expense incurred between August 13, 1980, the effective date of § 552.080.3, RSMo Supp. 1980, and July 1, 1981 is found in § 630.-205, RSMo Supp.1980 which reads as follows:

> "630.205. Patient or representative liable for costs for services rendered.—1. The person receiving services and the person's estate, spouse, parents, if the person is a minor, and any fiduciary or representative payee holding assets for the person or on the person's behalf are jointly and severally liable for the fees for services rendered to the person by a residential facility, day program or specialized service operated or funded by the department. The department shall not charge parents for services it renders to persons who are eighteen years of age or older and who are residents of this state. The provisions of this subsection shall become effective July 1, 1981."

The sole statutory basis for a claim by the state against a patient receiving services from the Department of Mental Health, apart from patients such as Foltz committed under Chapter 552, during the period commencing August 13, 1980 is in the above quoted section. By its express terms, however, the effective date of the statute was postponed until July 1, 1981. Although § 630.205 did replace § 202.240, RSMo 1978 which formerly supported state claims for reimbursement from mental health patients, Chapter 202 was repealed in its entirety effective August 13, 1980. It thus appears that the legislature created a hiatus between August 13, 1980 and July 1, 1981 as to any statutory liability upon patients civilly committed to the custody of the Division of Mental Health.

Foltz reasons in his argument that the phrase "in accordance with Chapter 630, RSMo" used in § 552.080.3, RSMo Supp. 1980 necessarily incorporates the deferred effective date expressed in the patient liability section, 630.205.1, and that the liability otherwise imposed on patients committed after acquittal of a criminal offense by reason of mental disease or defect is likewise postponed until July 1, 1981. Because the funds appropriated from his account represent the cost of services he received before July 1, 1981, he contends the money must be returned.

More succinctly stated, the issue in this case is whether the phrase "in accordance with Chapter 630, RSMo" used in § 552.-080.3, RSMo Supp.1980 is to be construed as modifying the subject of patient liability or is of more limited effect. Under controlling principles of statutory construction, we are obliged to adopt the latter choice.

Because both of the statutes under consideration concern the same subject matter, they are in pari materia and, although found in different chapters, they must be construed together. *State ex rel., Goldberg v. Barber & Sons Tobacco, Inc.*, 649 S.W.2d 859 No. 64555 (Mo. banc 1983). If possible, effect must be given to each clause and where one statute deals with a subject in general terms and another in specific terms, the two should be harmonized when reasonable, but to the extent of any discord, the definite statute prevails. *State ex rel. Fort Zumwalt School District v. Dickherber*, 576 S.W.2d 532 (Mo. banc 1979). Qualifying words, phrases or clauses are to be applied to words or phrases in immediate context under the last antecedent doctrine and are not to be construed as extending to or including others more

---

**2.** Foltz has made no contention that the former language of § 552.080 in effect in 1977 when he was ordered committed controls his subsequent liability for the cost of care furnished after the 1980 revision of this statute. We therefore express no opinion on the question but assume for purposes of decision that the date of Foltz's commitment is irrelevant.

remote. *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864 (Mo. banc 1983).

Applying these rules of construction to the subject statutes, we first note that the enactment of Chapter 630 had no purpose or effect to establish patient or representative liability for repayment to the state of the cost for care to persons involuntarily institutionalized under Chapter 552. That liability was separately and expressly defined by the amendment of § 552.080. At least as to the liability of the patient himself, § 630.205 is no more than a rescript of similar provisions in the repealed Chapter 202. It is therefore unnecessary to rely on any portion of Chapter 630 as a basis for the obligation for which the state obtained satisfaction by appropriating Foltz's account. Indeed, where only the liability of the patient from his own resources is involved and not a claim against third parties, the source must be § 552.080 as the decision in *Robb v. Estate of Brown,* supra, ruled.

If, then, § 552.080 stands alone as the statute fixing liability upon the particular class of mental patients to which it is limited, we must consider what purpose was intended by the legislature when the phrase creating the interrelation with Chapter 630 was added. That language cannot be ignored because to do so would presume the legislature had adopted a meaningless enactment.

■ As a modifying phrase, the language, "in accordance with Chapter 630, RSMo" which concludes a sentence must refer to prior content of that sentence. Under the last antecedent doctrine, we look first to the words immediately preceding which are "those responsible for his support." Reading the phrase in question in conjunction with and as explanatory of the preceding words, the consequence is a directive that Chapter 630 be looked to for the definition of what persons are responsible for payment of expenses other than the patient himself. This construction finds support in the fact that § 552.080 does not list third parties who are respon-

sible for such support payments while Chapter 630 does. Chapter 630 therefore serves a purpose in conjunction with § 552.080 in providing details as to the general subject of third party liability.

By a similar exercise of construction under the last antecedent doctrine, it may be concluded that the phrase in question modifies the words "shall be paid." If that be so, then the phrase serves to incorporate under § 552.080 the assessment and collection procedures set out at considerable length in Chapter 630 but entirely absent from Chapter 552.

Foltz's contention would require application of the qualifying words "in accordance with Chapter 630, RSMo" to extend to the word liability which is more remote from the phrase than either the words "those responsible for his support" or "shall be paid." Under the authority cited, such would depart from the usual rules of construction. In this case, application of the phrase to the words most nearly antecedent to it is factually more credible because that interpretation serves to flesh out details otherwise left unstated. The same may not be said for Foltz's argument because, as noted earlier, patient liability is briefly but fully expressed within the language of § 552.080 and a cross reference to Chapter 630 adds nothing.

We conclude, therefore, that § 630.205, RSMo Supp.1980 has no application in establishing the basic obligation of a patient committed, as was Foltz, and that his responsibility to pay for the cost of his own care is defined by § 552.080, RSMo Supp. 1980. That section was effective August 13, 1980 and therefore Foltz states no cause of action when he seeks to recover funds applied to costs of his care incurred after August 13, 1980. On this question, § 630.205.1, RSMo Supp.1980 has no bearing.

The judgment is affirmed.

All concur.