743 F.Supp. 677 (1990)
Gregory CRYTES, and Thomas King, John Wolfin, Jeremiah Baker, Jimmy Bailey Rogers, Claude Skiles and Joseph N. Whitfield, Plaintiffs,
v.
Dr. C. Keith SCHAFER, Director of Department of Mental Health, State of Missouri, Defendant.
No. 88-0901 C (5).
United States District Court, E.D. Missouri, E.D.
August 3, 1990.
David O. Fischer, Fischer and Dolan, St. Louis, Mo., for plaintiffs.
Timothy P. Duggan, Jefferson City, Mo., Kevin B. Behrndt, St. Louis, Mo., for Schafer.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on the parties' cross motions for summary judgment. The parties agreed that the issues in this case were strictly issues of law. Therefore, the Court removed this matter from the trial docket, and the matter was submitted to this Court on the pleadings for this Court's determination of the issues.
The seven plaintiffs in this case are patients of the Missouri Department of Mental Health. Each of the plaintiffs was involuntarily committed to the custody of the Director of Mental Health after being found not guilty by reason of mental disease *678 or defect, of criminal charges. Each of the plaintiffs have been determined to be totally disabled by the Social Security Administration, due to mental illness, and are receiving monthly benefits therefrom. In this action, plaintiffs are challenging the procedures used by the Department of Mental health to secure payment for their care and treatment. The gravamen of their complaint is that the Social Security disability benefits which each of the plaintiffs receives should not be used to pay these charges.
Dr. Keith Schafer has been the Director of the Department of Mental Health, State of Missouri, since July 1986. He is the Chief Executive officer of that Department. Plaintiffs Gregory Crytes, Thomas King, John Wolfin, Jeremiah Baker, Jim Bailey Rogers and Joseph Whitfield are currently hospitalized at St. Louis State Hospital. Plaintiff Claude Skiles was formerly hospitalized at St. Louis State Hospital, but since October 24, 1988 he has resided at Southeast Missouri Mental Health Center in Farmington, Missouri. All plaintiffs are currently receiving services from the Department of Mental Health.
St. Louis Hospital requested that the Social Security Administration select it to serve as representative payee, pursuant to 42 U.S.C. § 405(j), for plaintiffs Crytes, Rogers, Whitfield and Wolfin. St. Louis State Hospital has been authorized to serve in that capacity by the Missouri legislature, pursuant to § 630.315, RSMo.1986. The Social Security Administration named the St. Louis State Hospital as representative payee. Southeast Missouri Mental Health Center is currently representative payee for plaintiff Skiles. Plaintiff Thomas King has been adjudicated incompetent, and his sister Dorothy King James has been appointed his guardian. She is also his representative payee for Social Security benefits. Lorraine Harris is representative payee for Jerry F. Baker.
Pursuant to current Social Security Administration guidelines, St. Louis State Hospital allows at least thirty dollars per month for personal spending to each plaintiff for whom it serves as representative payee. Pursuant to St. Louis State Hospital Facility policy, each patient may receive a larger amount for personal spending if his treatment team approves the amount. Each of the plaintiffs have received personal spending money in excess of the thirty dollar monthly minimum. None of the plaintiffs have ever submitted a request for additional personal spending money which has been denied by the treatment team.
The funds received by St. Louis State Hospital as representative payee, which are not allotted to the patient for personal spending as described above, are applied to charges billed by the Department of Mental Health for the patient's care and treatment pursuant to § 630.210, RSMo 1986, as provided by 20 C.F.R. § 404.2040(b) (1989).
The plaintiffs and their representative payees are responsible for the charges for their care and treatment provided by the Department of Mental Health, pursuant to Section 630.205 and Section 552.080, RSMo 1986. The Department of Mental Health determines the daily billing for each of the plaintiffs by calculating the patient's financial resources and income per month (including his Social Security benefits), deducting the amount allowed each patient for personal spending and then dividing that amount by the number of days per month that the patient received services. Each plaintiff's Social Security benefits are used in calculating this daily charge.
The Department of Mental Health has never taken legal action against Dorothy James or Lorraine Harris for payment of the hospital's charges for the care of plaintiffs King or Baker. Moreover, the Department of Mental health has never filed any legal action or claim in any court against any of the plaintiffs to collect amounts due for care and treatment. Nor has the Department used execution, levy, attachment or garnishment to obtain payment for care and treatment from any of the plaintiffs.
Although their admission to St. Louis State Hospital was the result of criminal proceedings, the plaintiffs in this case, like all patients of the Department of Mental Health, are liable for the cost of their care *679 and treatment. State ex rel. Foltz v. Ahr, 666 S.W.2d 777 (Mo.App.1983). This is provided by statute at subsection 3 of Section 552.080, RSMo 1986, which states:
3. If a person is ordered held or hospitalized by the Director of the Department of Mental Health or in one of the facilities of the Department of Mental Health pursuant to following provisions, the liability for hospitalization shall be paid by the person, his estate or those responsible for his support in accordance with Chapter 630, RSMo:
* * * * * *
(2). Following acquittal because of lack of responsibility due to mental disease or defect under Section 552.030, and subsequent order of commitment to the Director of the Department of Mental Health under Section 552.040.
In Chapter 630 of the Revised Missouri Statutes of Missouri, the obligation to pay is further defined at Sections 630.205-630.220. As provided by § 630.205:
1. The person receiving services and the person's estate, spouse, parents, if the person is a minor, and any fiduciary or representative payee holding assets for the person or on the person's behalf are jointly and severally liable for the fees for services rendered to the person by a residential facility, day program or specialized service operated or funded by the Department.
Most patients, including all of the plaintiffs, are not charged the full costs of their care and treatment. In the case of each of the plaintiffs, the charges are based upon the income they receive through Social Security disability benefits. St. Louis State Hospital calculated these charges by determining the total amount of benefits received in a month; deducting the amount allotted to the patient for personal spending, and then dividing the amount remaining by the number of days which the patient received services in a particular month. The result is a daily charge or "per diem." As provided by § 630.205, this charge is billed to the patient and/or any other individual responsible for his support. In the case of the plaintiffs, their representative payees are billed.
The charges assessed for the plaintiffs' care and treatment are authorized by state law. The plaintiffs argue, however, that federal law, specifically 42 U.S.C. § 407, prohibits the payment of these charges from the funds they receive from the Social Security Administration.
Title 42 U.S.C. § 407 provides:
(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or the right or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
(b) No other provisions of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.
Thus, according to the plain language of the statute, creditors are prohibited from reaching a debtor's Social Security benefits through the use of a transfer or assignment or through execution, levy, attachment, garnishment or other legal processes.
The issue before this Court is whether defendant has violated Section 42 U.S.C. § 407 by requiring plaintiffs to use their Social Security benefits to pay for their expenses at the mental hospital. Although this issue has not yet been addressed by the Eighth Circuit Court of Appeals, this Court finds from an examination of the law in other circuits that defendant's actions do not violate § 407(a).
The rationale in the Fifth Circuit decision of Department of Health v. Davis, 616 F.2d 828 (5th Cir.1980) is persuasive. In that case the State of Florida had been taking care of Arthur Grady Glassock, an adjudicated incompetent, in the Florida State Hospital. Over the years, Glassock's guardian in Alabama had accumulated over *680 $40,000 in social security and veterans' benefits. From these accumulated funds, Florida sought reimbursement for Glassock's past care and maintenance. Florida's Department of Health and Rehabilitative Services is authorized under Florida Statute to collect payment for the care of patients in state institutions. The correct construction and application of the Florida Statute with the Social Security exemption set forth in § 407 was at issue in the case. Davis, 616 F.2d at 829.
The Fifth Circuit Court of Appeals held that the Department of Health was entitled to reimbursement for the care and maintenance of Glassock from the accumulated fund of Social Security benefits. In reaching this decision the Court stated the following:
The purpose of social security benefits for the disabled is to provide for their care and maintenance. The purpose of the social security exemption is to protect social security beneficiaries from creditors' claims. Enacted as part of the original social security legislation, Pub.L. No. 64-271, § 208, 49 Stat. 622, 625 (1935), this exemption evinces a clear legislative purpose of precluding beneficiaries from diverting their social security payments away from the statute's seminal goal of furnishing financial, medical, rehabilitative or other services to needy individuals. 42 U.S.C. § 301. Neither the purpose of the benefits, nor the purpose of the exemption, is accomplished by barring Florida from reimbursement. The federal grants are for the purpose of assuring the beneficiary's care and maintenance, and the state seeks nothing more than to apply them to the reasonable cost of Glassock's care. Fees collected by the Department are calculated according to both the cost of care and the patient's ability to pay, thereby permitting the Department to consider both the beneficiary's present and future needs in setting a fee schedule.
Davis, 616 F.2d at 831. The Court concluded that "[s]ince Glassock has the ability to pay, ... and the funds held by his guardian were received for his care and maintenance, the state's request for reasonable reimbursement [from this fund] is entirely justified." Davis, 616 F.2d at 832.
To paraphrase the reasoning of the court in Davis, 616 F.2d at 831, Social Security benefits for the disabled or retired are intended to provide those persons with some funds for their financial, medical and rehabilitative needs without fear of ordinary creditor intervention. When the state provides those needs, as in the case of these plaintiffs, it does not violate congressional intent by reimbursing the state from Social Security benefits allocated to plaintiffs. There is nothing in the legislative history of 42 U.S.C. § 407 to suggest a Social Security recipient should have double coverage; that is, the award of Social Security benefits when a state is already providing the benefits for which Social Security is intended. This is so especially in view of the facts of this case where the State of Missouri is providing these benefits to persons committed to the custody of the Director of Mental Health because they have been found to be not guilty of criminal charges due to mental disease or defect.
In Fetterusso v. State of New York, 715 F.Supp. 1272 (S.D.N.Y.1989), the plaintiffs were involuntary committees to the custody of defendant New York State Office of Mental Health. They complained that their obligation to contribute to the cost of their care and maintenance was in violation of 42 U.S.C. § 407. The Court stated:
In accordance with federal regulations, a representative payee has the responsibility to:
Use the payments he or she receives only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary.
20 C.F.R. § 404.2035(a) (1988). The regulations further define "for the use and benefit of the beneficiary" to include use "for the beneficiary's current maintenance." 20 C.F.R. § 404.2040(a) (1988). If the beneficiary is institutionalized "because of mental or physical incapacity, current maintenance includes the customary *681 charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution." 20 C.F.R. § 404.2040(b) (1988).
Thus, the representative payee is not forced by legal process to use Social Security benefits to meet costs assessed under § 43.03(c). Rather, the federal regulations in specifically providing for the application of Social Security benefits to the costs of care for mental incapacity, indicate that "a representative payee has a responsibility, if it is possible to do so, to make such payments." Woodall v. Bartolino, 700 F.Supp. 210 (D.N.J.1985). Such choice by one charged with determining the appropriate use of Social Security benefits does not conflict with the protection of 42 U.S.C. § 407(a).
Based on the foregoing, the Court finds that the Department of Mental Health's actions in using plaintiffs' Social Security as payment for the plaintiffs' care and treatment do not violate 42 U.S.C. § 407(a). This is especially so because defendant has taken absolutely no action in violation of the express language of Section 407(a).
Plaintiffs cite the two Supreme Court decisions, Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), and Bennett v. Arkansas, 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988), in support of their position that defendant cannot require them to use their Social Security benefits to pay for their care at the hospital. However, in both those cases the governmental agency engaged in some action directly violative of Section 407. Here, defendant has taken absolutely no action in violation of the plain language of the statute. Defendant has not attached, executed, levied, garnished or engaged in any other legal process in using plaintiffs' social security benefits to reimburse, in effect, the state for their care and maintenance of plaintiffs.
Thus, as defendant has not violated section 407(a) of Title 42, and because the Court finds that defendant's use of plaintiffs' Social Security benefits is proper, the Court finds that judgment should be entered in favor of defendant. Judgment will be entered accordingly.